UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CAROLE NEWMARK,                                       :

           Plaintiff,                          :         07-CIV-2861 (CLB)

  -against-                                          :

LAWRENCE HOSPITAL,                                    :
PAT ORSAIA, individually, and
CATHY MAGONE, individually,                           :

           Defendants.                         :
-------------------------------------------------------x

## NOTICE OF DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT
## AND AFFIDAVIT OF CATHERINE MAGONE

PLEASE TAKE NOTICE that, upon the affidavit of Catherine Magone, sworn to on July 10, 2008 (attached as Exhibit A); the Statement of Undisputed Facts submitted pursuant to Local Civil Rule 56.1 and the exhibits attached thereto; the accompanying memorandum of law, and all other papers and proceedings previously submitted herein, defendants Lawrence Hospital Center and Catherine Magone will move this Court (the Hon. Charles L. Brieant, U.S.D.J.) at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, on September 12, 2008 at 10 am, or as soon thereafter as counsel can be heard, for an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting defendants summary judgment dismissing, with prejudice, the Amended Complaint of plaintiff Carole Newmark in its entirety and awarding defendants such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      July 11, 2008

                                    Respectfully submitted,

                                    **COLLAZO CARLING & MISH LLP**

                                    By: _/s/ John Keil_____
                                        John P. Keil (JK 2794)

                                    Attorneys for Defendants
                                    Lawrence Hospital Center and
                                     Catherine Magone
                                    Office and P.O. Address
                                    747 Third Avenue
                                    New York, New York 10017-2803
                                    (212) 758-7600

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CAROLE NEWMARK,

                                                 Plaintiff,                07-CIV-2861(CLB)

    -against-                                                **AFFIDAVIT OF**
                                                                         **CATHERINE MAGONE**

LAWRENCE HOSPITAL CENTER,
PAT ORSAIA, individually, and CATHY
MAGONE, individually

                                                 Defendants.
------------------------------------------------------------x

State of New York    )
                           ) ss:
County of Westchester )

       CATHERINE MAGONE, being duly sworn, deposes and says:

       1.     I have been employed at Lawrence Hospital Center (the "Hospital") since 1999 in the position of Director of Quality, Case Management, and Social Work, and I have been named as an individual defendant in this action. I make this affidavit based on my personal knowledge and documents I have reviewed in the course of this litigation, and I submit it in support of defendants' motion for summary judgment in the above-captioned proceeding.

       2.     As I said and wrote at the time of the events, and as I explained at my deposition testimony in this matter, my decision to send Nicole Serra with the Palliative Care Service on a site visit to a Columbus, Ohio hospital was based on input from Maura Del Bene, Nurse Practitioner for the Hospital's Palliative Care Service, and Rose Ann O'Hare, the Hospital's Vice-President for Patient Care Services; the fact that I had assigned Newmark a project in

1

Disaster Mental Health on which I had seen her make no progress; the fact that I thought Serra would benefit from a project of her own; and conclusions I had drawn about Newmark's demeanor as compared to Serra's. My decision was not based in any respect on Carole Newmark's age or Nicole Serra's age. I was aware, from my own observations and discussions with other Hospital employees, of Newmark's negative attitude and her frequent displays of anger and frustration about her employment and working conditions. Because I wished to avoid upsetting Newmark unnecessarily in the context of an isolated assignment by confronting her about her poor attitude, angry disposition, and prior shortcomings in her work, I decided, in explaining my decision to her on August 15, 2006, to instead emphasize Serra's abilities and need for professional growth. It is for this reason that I explained to Newmark and repeated in my deposition testimony that I had decided to send Serra on the business trip to Columbus, Ohio with the Palliative Care Service that she was young in her career, and this was a good opportunity for her to have a project of her own.

3. Prior to my decision, I had observed that Newmark required Serra to "shadow" her for the first two months of Serra's employment while Newmark went about social work tasks, and afterwards Newmark appeared to be sheltering Serra in a way I considered overprotective and not necessarily beneficial to Serra's professional development. It is for this reason that I communicated to Newmark when explaining the reasons for my decision that Serra needed a project of her own.

4. As is my practice, I prepared my notes to file that were produced as documents N-140, N-141, N-163, N-164, N-165, N-176, N-248, and all other documents I prepared which were later produced in this litigation, on the same dates those documents indicate on their face.

5. The appointment of a social worker in August 2006 to go on a business trip to Ohio with the Palliative Care Service in September 2006, or to take primary responsibility for the

2

social work contribution to palliative care at the Hospital, was not associated with an increase in pay, promotional opportunities, benefits, change in office or location, or other improvements in terms and conditions of employment. After Serra was selected, she did not receive such benefits for her palliative care work. Both social workers were expected to provide palliative care as the situation demanded, and palliative care was one project among many assignments that each social worker was responsible for.

6. I have not witnessed, nor am I aware of, any displays by Nicole Serra of a negative attitude in the workplace, nor am I aware of Serra making any verbal or nonverbal complaints about the department or her working conditions during rounds, meetings, or other public settings within the Hospital.

7. After I learned about Newmark's complaint alleging discrimination by me, I disclosed it to my supervisor, but at no time during Newmark's employment did I disclose Newmark's complaint of discrimination to any case managers in my department, or to any other Hospital employees, and did not discuss Newmark's complaint with anyone other than my supervisor and Patricia E. Orsaia, who was then the Hospital's Director of Human Resources.

8. I did not receive any complaints about Newmark's performance from the case managers who reported to me prior to approximately August 15, 2006, and I did not encourage or solicit complaints about Newmark from the case managers at any time. After August 15, 2006, I received numerous complaints about Newmark's performance from several different case managers, including those complaints that I recorded as notes to file and produced during discovery previously in this litigation. I have not received any complaints from case managers about Serra's performance since Serra began work in April 2006.

9. When I received the complaints about Newmark by case managers, I was and remain unaware of any reason to believe that these complaints were not credible, and I have

3

never known these case managers to be untruthful. I did, however, look into all of the complaints that I received about Newmark to ascertain whether I agreed with them, and was persuaded that the complaints accurately reflected performance deficiencies on Newmark's part. When examining these complaints from case managers, I held Newmark to the same standard after I learned about her complaint as I did before, and as I do all other employees.

10. Newmark's complaint to Orsaia about my decision to send Serra to visit a hospital with the Palliative Care Service played no role in my decision to extend Newmark's probationary period. As I have previously testified, that decision was based on Newmark's poor attendance and complaints I had received from other Hospital employees about her work performance. Prior to Newmark's arrival at the Hospital, I recall extending the probationary period of at least one other staff member, case manager Dore Kessman, for extensive absenteeism.

11. The Hospital, and I in the management of my own department, uniformly subject all new employees to an initial evaluation period to assess the individual's skill and behavior in the new position. Because I am the director of my department, I do not need written approval from my own supervisor or from Human Resources before extending the probationary period of any employee, although I regularly discuss my decision with Human Resources before carrying it out. The probationary period ends with a performance evaluation and an assessment of whether the employee has sufficiently met Hospital expectations to warrant a continuation of employment. In my own practice, and in the Hospital's practice generally, the standards for satisfactory completion of the probationary period are different from the standards for progressive discipline, and are intended to determine whether the employer and employee can work well together before progressive discipline is applied. In my career at the Hospital before Newmark's employment, I recall terminating social worker Rose Bartone, case manager Dore Kessman, and case manager Beth Jamison for failure to successfully complete their respective

4

probationary periods. Bartone's unsuccessful completion of her probationary period related to poor organization, failure to carry an adequate caseload independently, and failure to adjust to the Hospital's case management model. Bartone, like Newmark, had previously been employed as a social worker at Phelps Memorial Hospital before coming to Lawrence Hospital, but to my knowledge worked in an inpatient setting rather than an outpatient psychiatric setting. Kessman's unsuccessful completion of her probationary period related to poor attendance, poor punctuality, lack of proper documentation, a negative attitude, difficulty managing her caseload, and failure to take a more pro-active approach to discharge planning and reducing patient length of stay. The average caseload of a case manager, depending on the floor and the patient census, is usually 15-20 patients. Jamison's unsuccessful completion of her probationary period related to poor attendance and concerns about office comportment and professional judgment, among other problems. None of these individuals submitted a complaint of discrimination or retaliation against me either before or after I terminated their employment, and in each case I had previously received multiple complaints about the individual's performance, some of which I documented, from case managers and other staff in my department. There are no instances in my employment at the Hospital where I received numerous complaints from multiple staff members about an individual's performance, and later concluded that that individual had successfully completed his or her probationary period and should remain employed at the Hospital.

12. In the performance evaluation I completed at the end of Newmark's probationary period, which the Hospital produced as pages N-167 through N-175, and which was marked as Exhibit 20 at my deposition (the "performance evaluation"), I noted under the heading titled "Respect" that Newmark's peers in the department perceived her to be negative and unapproachable, and that Newmark became defensive when challenged regarding her cases. This comment is based on the complaints about Newmark's performance that I received from

case managers in August and September 2006; observations that I made and heard about from others during the same time period that Newmark frequently made gestures, sighed audibly, chewed her gum audibly, and rolled her eyes to express displeasure during rounds, as well as making verbal commentary; and my own observation during weekly staff meetings to discuss patient lengths of stay that Newmark became defensive and on many occasions struggled to explain the continued presence in the Hospital of patients who had been referred to her.

13. My comment in the performance evaluation under the heading titled "Quality" noted that Newmark frequently complained that she was overwhelmed even with a small caseload, and had not taken any initiative in working on the Mental Health Disaster Program. This comment was based on the fact that I did not see any improvement in Newmark's performance in these areas after I spoke to her about my concerns on July 20, 2006, as well as Newmark's own explanation for her lapses in performance.

14. I rated Newmark as "needs improvement" in the category for "Teamwork" on the performance evaluation because of her apparent lack of regard for teamwork. In my comment, I noted that Newmark's coworkers complained that Newmark was difficult to work with and did not respond in a timely manner to requests for assistance. This was based, among other considerations, on multiple complaints I received from different case managers, not all of which I had an opportunity to document, about Newmark's failure to respond to their requests for Patient Review Instruments to be completed on a timely basis so that patients could be discharged to nursing homes.

15. My comment in the performance evaluation under the heading of "Service Excellence" noted that Newmark did not respond to patient needs in a timely manner and was not pro-active in troubleshooting difficult cases. In the case management model, the social worker is responsible for planning the discharge of any patients referred to her; a serious

6

psychiatric condition or the patient's lack of medical insurance are common reasons for such a referral. In my assessment, Newmark did not take as prompt or pro-active an approach as I considered appropriate to ensuring that patients completed Medicaid applications, following up with external contacts that were not immediately responsive, and following up with patients and families about discharge planning.

16. Newmark's complaint to Orsaia about my decision to send Serra on a business trip with the Palliative Care Service, and her participation and comments in a September 28 meeting about that complaint, played no role in my decision to terminate Newmark's employment for failure to successfully complete her probationary period in early October 2006.

17. I was out of the office on vacation from July 23, 2006 through approximately August 6, 2006, and from September 18 to September 23, 2006. Based on my review of Newmark's attendance record and other documents that were produced in this litigation, including those numbered N-489 and N-490, I recall that Newmark took vacation days on July 3, July 31 to August 4, and September 5 to September 8, was out of the office for an approved medical absence on September 26 and 27, was out for holidays on May 29, July 4, and September 4, and was out of the office for unscheduled time off (i.e., sick time) on May 15, 16, 17, August 21, and August 29, as well as April 3 and 4. April 3 and 4 were inaccurately recorded by my staff as days worked on Newmark's attendance record.

18. After I learned that Newmark had complained about me to Orsaia, I did not, nor was it my intention to, subject her to a different manner of treatment than I had previously. I did not ignore or disregard her at meetings, avoid private conversations with her, avoid making eye contact, or exhibit any other change in demeanor or manner.

19. The Hospital's Department of Quality, Case Management, and Social Work plays a central function in ensuring that Hospital finances remain sound. Because reimbursement to

7

the Hospital for providing medical services to patients under Medicare, Medicaid, and private insurance plans is calculated according to prescribed formulas that do not account for actual cost, my department is charged with ensuring that the actual costs of providing medical care are minimized to the extent consistent with sound medical practice. A major component of this process is minimizing the length of each patient's hospital stay, and the average length of stay overall, where this is medically appropriate. In 2006, $740,000 of an overall budget shortfall in excess of $2.5 million at the Hospital was attributable to the average Medicare patient's length of stay exceeding budgeted expenses by 0.5 days (6.5 days on average rather than 6.0 as budgeted) and to the average non-Medicare patient's length of stay exceeding budgeted expenses by 0.2 days (3.8 days on average rather than 3.6 as budgeted).

Dated: Bronxville, New York
July 10, 2008

_____
CATHERINE MAGONE

Signed and sworn to before me
this 10th day of July, 2008

_____
Notary Public

LINDA GISLAO
Notary Public, State of New York
No 01GI6021069
Qualified in Westchester County
Commission Expires 3/9/11

8