UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

CAROLE NEWMARK,

                              Plaintiff,                    **07 CIV. 2861 (CS)**

        -against-

LAWRENCE HOSPITAL CENTER,
PAT ORSAIA, individually, and CATHY
MAGONE, individually,

                              Defendants.

-----------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION
# FOR SUMMARY JUDGMENT

LOVETT & GOULD, LLP
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, New York 10605
914-428-8401

Table of Contents

Page

Table of Authorities ...............….....…….....................................................iii

Preliminary Statement.................................................…..................…..…..1

Preliminary Observations........................................................................1

Summary of Background..........................................................................3

    I.     Parties............................................................................3

    II.    Plaintiff's Interview at Lawrence Hospital ....................................4

    III.   Shortage of Social Workers at Lawrence.....................................5

    IV.   Plaintiff's Employment at Lawrence...........................................5

    V.    Magone Fails to Appoint Plaintiff as the Social Worker Dedicated
          to the Palliative Care Service Because of Plaintiff's Age.....................6

    VI.   Plaintiff's Complaints Regarding Age Discrimination.....................7

          a.  August 16 or 17, 2006 Complaint...................................7

          b. Plaintiff's Second Complaint.........................................8

          c. Plaintiff's September 13, 2006 Complaint.........................9

          d. Plaintiff's September 28, 2006 Complaint.........................10

          e. Newmark's September 29, 2006 Email Complaint.....................11

    VII.  Six Days After Newmark's Meeting with Orsaia and Magone
          to Complain About Age Discrimination and Five Days After
          Newmark's September 29th Email Complaining of
          Discrimination, Newmark's Employment is Terminated...................12

    VIII. Others Employees' Complaints Concerning Case Managers
          and Magone.....................................................................14

ARGUMENT...................................................................................15

STANDARD PRINCIPLES................................................................15

POINT I
    THERE ARE MATERIAL FACTS, IF BELIEVED, TO PRECLUDE
    SUMMARY JUDGMENT ON PLAINTIFF'S ADEA AND
    SECTION 296 DISCRIMINATION CLAIM.......................................16

    A. The Material Facts Show that Plaintiff Suffered Adverse
    Employment Action.....................................................................17

    B. The Disputed Material Facts Show That Magone
    Subjected Newmark to Discrimination By Reason of Her Age.....................18

POINT II
    THERE ARE AMPLE ISSUES OF MATERIAL FACT, WHICH PRECLUDE
    SUMMARY JUDGMENT ON NEWMARK'S RETALIATION
    CLAIMS..................................................................................21

    A. The Material Facts Establish that there is both Direct and Indirect
    Evidence of a Casual Connection between Newmark's Protected Activity and the
    Termination of Her
    Employment.............................................................................22

    B. The Material Facts Demonstrate that Defendants' Stated Reasons
    for Terminating Plaintiff's Employment are Pretextual...............................23

        1. The So-Called Complaints Regarding Plaintiff Are Clearly
        Pretextual...............................................................................24

        2. Defendants' Claim that Plaintiff's Probationary Position was Terminated
        Due to Unscheduled Time Off is Pretextual.....................................28

        3. Given the strong temporal connection between Newmark's protected
        activity and the termination of her employment, the material disputed
        facts show that Defendants' Proffered Reasons are False.......................29

Conclusion..................................................................................30

## TABLE OF AUTHORITIES

Cases                                                                        Page

Beyer v. County of Nassau, 524 F.3d 160, 164 (2d Cir. 2008)...............................18

Boyce v. Bank of New York, 2006 U.S. Lexis 20278.........................................19

Carlton v. Mystic Transportation, Inc., 202 F.3d 129 (2d Cir. 2000).......................24

Colon v. Coughlin, 58 F.3d 865 (2d Cir.1995)...............................................23

Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132 (7th Cir. 1993)....................17

Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775 (2d Cir. 2003). ...................16

Feingold v. New York, 366 F.3d 138 (2d Cir. 2004) ....................................21,22

Figueroa v. New York City Health Hosp. Corp., 500 F.Supp.2d 224
   (S.D.N.Y. 2007) ........................................................................19

Fisher v. Vassar College, 114 F.3d 1332 (2d Cir. 1997) ................................16,19

Galabya v. New York City Bd. of Educ., 202 F.3d 636 (2d Cir. 2000) ....................17

Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219 (2d Cir.1994) ..........16

Grady v. Affiliated Cent., Inc., 130 F.3d 553 (2d Cir. 1997) ..............................19

Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181 (2d Cir. 2006) ..........................20

Guilbert v. Gardner, 480 F.3d 140 (2d Cir. 2007). .....................................15,16

Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir.1984).......................................19

Jute v. Hamilton Sundstrand Corp., 402 F.3d 166 (2d Cir. 2005) ...................18,29,30

Kassner v. 2nd Avenue Delicastessen, Inc., 496 F.3d 229 (2d Cir. 2007) ..................17

Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985) .............................................16

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002) ............24

Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir.1998) .....................21,22,24

Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170 (2d Cir.1996) ..........................22

<u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164 (2d Cir. 2001). ....................................16

<u>Rose v. N.Y. City Bd. of Educ.</u>, 257 F.3d 156 (2d Cir.2001) ...............................23

<u>Schwapp v. Town of Avon</u>, 118 F.3d 106 (2d Cir. 1997) .....................................16

<u>Sklaver v. Casso-Solar Corp.</u>, 2004 WL 1381264 *5-6 (S.D.N.Y.) .........................20

<u>Sumner v. United States Postal Serv.</u>, 899 F.2d 203 (2d Cir.1990) ..........................22

<u>Terry v. Ashcroft</u>, 336 F.3d 128 (2d Cir. 2003) ................................................16

<u>Statutes</u>

Age Discrimination in Employment Act, 29 U.S.C. §621 *et. seq.* ............................3

N.Y. Exec. Law §296…....................................…................................…........................3

# PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of Plaintiff Carole Newmark in opposition to Defendants' motion for summary judgment. Since the factual background of this case is set forth at length in the Rule 56.1 Statements of the parties and Plaintiff's response to Defendants' 56.1 Statement the material facts are summarized.

As set more fully *infra*, the facts of this case, which are adamantly disputed, dictate that Defendants' motion be denied in all respects.

## Preliminary Observations

At minimum, there are material issues of disputed and undisputed fact which show that Defendants retaliated against Plaintiff because she complained of age discrimination. On August 15, 2006, Defendant Cathy Magone ("Magone") advised Plaintiff Carole Newmark ("Newmark") that she was going to appoint Nicole Serra ("Serra") to be the social worker dedicated to the palliative care program because Serra was young and could handle the job better than Newmark could. Thereafter on or about August 16 or 17, Plaintiff complained to Pat Orsaia the Director of Human Resources about Magone's discriminatory statement. Magone learned of Plaintiff's complaint on or before August 21, 2006.

When Plaintiff had not heard from Orsaia about her complaint, Plaintiff pursued her complaint and on September 13, 2006, she again met with Orsaia to discuss her complaint. After Plaintiff followed up yet again on September 28, 2006, Newmark, Orsaia and Magone met that day to discuss Plaintiff's age discrimination complaint. On September 29, 2006, Newmark followed up again by email to express her continued concerns about the age discriminatory comments made by Magone on August 15th and again on September 28th (this time in the

presence of Orsaia) and Magone's sudden announcement at the meeting which was intended for the purpose of discussing Magone's discriminatory comments, that Plaintiff's probation was being extended.   The foregoing facts alone demonstrate that -- Plaintiff has established that Defendants took retaliatory action against her by reason of her complaints.

Incidentally, it should be noted that Orsaia never reduced Plaintiff's complaint of discrimination in writing and when Plaintiff addressed the September 29th email only to Orsaia about Magone, Orsaia violated Plaintiff's confidence by forwarding the email to Magone.

Instead of focusing on these clearly disputed facts, Defendants instead try to focus on some of Plaintiff's concerns shared by Lawrence's other employees relating to the case managers.  For example, Defendants emphasize in their moving papers that Newmark described some of the case managers with a "backbiting" and "pathological" mentality.  Defendants unsurprisingly fail admit that Serra and Del Bene had the same opinion of the case managers (See Pl. 56.1 Stmt ¶¶62-70).  Serra also has admitted that she does not trust them because they are difficult to work with and are more interested in gossiping about other employees' work than doing their own work (P. 56.1 Stmt ¶65).  Indeed, separate and apart from Newmark, Serra and Del Bene, Diane Lance the Assistant Director of Case Management has advised Orsaia that there was considerable "dysfunction" among the case managers (Pl. 56.1 Stmt ¶64).  Magone was also constrained to admit that historically social workers and case managers have had difficulties getting along, have "issues" and that as of February 2008, there was continued staff unrest (Pl 56.1 Stmt ¶69-70).

In view the foregoing difficulties with case managers, Defendants' supposed reliance on their account as a justification for terminating Newmark's employment is hardly credible -- and is in fact incredible -- especially since none of the writings that were mostly created by Magone

2

concerning Plaintiff's performance of her job responsibilities started until August 31, 2006 -- just ten days after Orsaia advised Magone about Plaintiff's claim of age discrimination claim against her (Magone).

In view of Magone's admission that staff unrest among the case managers was an ongoing issue, Defendants' supposed reliance of their supposed account with respect to Plaintiff is completely false. As the disputed and undisputed facts set forth *infra* show, there are ample questions of fact that preclude summary judgment on Plaintiff's discrimination and retaliations claims under Age Discrimination in Employment Act, 29 U.S.C. §621 *et. seq.* and Section 296 *et seq.* of the Executive Law of the State of New York.

## SUMMARY OF BACKGROUND

### I.    Parties

Plaintiff Carole Newmark is sixty-two years old (Pl. 56.1 Stmt ¶1). Prior to working at Defendant Lawrence Hospital Center (hereinafter "Lawrence") in 2006, Newmark interned there in the mid-1990s and was later employed there as a Clinical Social Worker during the period from June 1997 until December 1998 (Pl. 56.1 Stmt ¶5). During her earlier tenure at Lawrence, Denise Galloway was Newmark's supervisor (Id.). During her employment at Lawrence, Plaintiff received positive performance evaluations and positive feedback relating to her work (Id.).

In 2006, Defendant Pat Orsaia[1] (hereinafter "Orsaia") was at all times relevant the Director of Human Resources at Lawrence (Pl. 56.1 Stmt ¶2) and Magone was the Director of Quality and Case Management (Pl. 56.1 Stmt ¶3).

---

[1]Orsaia was named as a Defendant, but a Summons and Complaint was never served on her.

## II.     Plaintiff's 2006 Interview at Lawrence Hospital

Immediately preceding Newmark's employment at Lawrence in late 2006 during the period from November 1, 2004 through February 2006, Plaintiff was employed at Phelps Memorial Hospital providing outpatient mental health care to patients (Pl. 56.1 Stmt ¶7).

Plaintiff's former supervisor, Galloway, the Assistant Director of Social Work at Lawrence advised Magone that Plaintiff would be a good candidate for a social worker position because Newmark was a good worker (Pl. 56.1 Stmt ¶8). Galloway was retiring after twenty-eight years at Lawrence (Pl. 56.1 Stmt ¶9).

Despite the fact that Plaintiff was happy working at Phelps, Galloway actively recruited Plaintiff -- advising her that it would be a good opportunity and it would mean more money, closer to home and the physicians working at Lawrence would be happy to have Newmark back (Pl. 56.1 Stmt ¶10). At the time of Newmark's interview, there were three social workers -- Denise Galloway, Jeretha Jones, and Elizabeth Basile (Pl. 56.1 Stmt ¶12).

Magone then interviewed Newark. Magone assured Plaintiff she would be able to use her mental and behavioral health experience extensively at Lawrence. Magone also advised Newmark that she would be able to use her experience in the palliative care program that was in the process of being developed and would be able to use that experience working with patients and families who have human-related issues, including serious and/or terminal illnesses, financial problems and difficulty coping with their diagnosis (Pl. 56.1 Stmt ¶13). Magone also promised that Plaintiff would be assigned to the palliative care team because it would be a great "opportunity" to utilize Plaintiff's mental health skills. Accordingly, Plaintiff expressed great interest in being involved in the palliative care program (Pl. 56.1 Stmt ¶14)

In short, Magone further assured Newmark that she would be able to "write" her own ticket at Lawrence because Magone did not have a profile of what Lawrence was looking for in a social worker (Pl. 56.1 Stmt ¶14). Magone additionally explained that there was a new case management model at Lawrence which was created after Newmark left employment at Lawrence in 1998 but Magone assured Plaintiff that she would not have any problems and expressed to Newmark that the case managers were "difficult, but she felt [Newmark] had the skills, being someone who worked in mental health, to work with them" (Pl 56.1 Stmt ¶15).

Magone further advised that there were not going to be any social workers working with her but that Plaintiff would be part of the process of hiring another social worker. Plaintiff was the only person interviewed for the position. Despite receiving resumes from other candidates, Magone determined that Plaintiff was the only suitable candidate (Pl. 56.1 Stmt ¶16)

### III.    Shortage of Social Workers at Lawrence

Before Galloway ceased being employed at Lawrence, she had expressed concern to Orsaia that the social work department needed more than three social workers, which included Galloway (Pl. 56.1 Stmt ¶18). Moreover, at Elizabeth Basile's exit interview with Orsaia, Basile stated she was resigning from her position as a social worker due to Galloway leaving and the fact that there was shortage of social workers which she had also previously expressed to Magone. Orsaia in turn communicated Basile's concerns to Magone relating to the shortage of social workers (Pl. 56.1 Stmt ¶¶19-20).

### IV.    Plaintiff's Employment at Lawrence

Plaintiff commenced employment as a Senior Social Worker at Lawrence in March 2006. The social work department went from having three social workers – which according to

Galloway and Basile was still deficient -- to one social worker (Newmark) at the time Newmark

commenced employment on March 20, 2006 (Pl. 56.1 Stmt ¶21). Early in her employment,

Newmark recommended Nicole Serra to Magone for employment as a social worker -- having

previously worked with Serra at Phelps (Pl. 56.1 Stmt ¶22). Serra was approximately thirty

years old at the time of her hire (Id.). Serra reported to Newmark (Pl. 56.1 Stmt ¶22).

### V.     Magone Fails to Appoint Plaintiff as the Social Worker Dedicated to the Palliative Care Service Because of Plaintiff's Age

The reason Plaintiff accepted the position at Lawrence was on the assurance by Magone

that Plaintiff would be appointed to be the social worker for the palliative care service (Pl. 56.1

Stmt ¶24).

The Palliative Care Program is a multi-disciplinary program comprising of physicians,

nurses, social workers and case management who work cohesively to make a patient more

comfortable (Pl. 56.1 Stmt ¶25). It involves pain management, family dynamics and working

with families to deal with terminal as well as chronic illnesses (Id.).

On August 15, 2006, Plaintiff was called into Magone's office and advised that Serra had

been selected the social worker dedicated to the palliative care service. When Plaintiff inquired

as to why she had not been involved in Serra's selection as her direct supervisor, Magone said

that "the decision was made and that's it". When Plaintiff asked on what basis the decision to

appoint Serra was made, Magone advised Plaintiff,

> Nicole Serra **is a younger than you are** and can take things in better than
> you can.

(Pl. 56.1 Stmt ¶26). Magone's statement at this meeting belies Defendants' attempt to

claim there is no inference of discrimination (Defendants' Memorandum p. 21). In view

of Magone's blatant discriminatory statement, there is clearly direct evidence of

discrimination.

Furthermore, in support of Defendants' attempt to also claim there was no adverse

action, Magone initially denied ever communicating to Newmark that she was appointing

to Serra to the palliative care service. When Magone was confronted with her August 15,

2006 note wherein she stated "I met with Carole Newmark today to inform her of my

decision to appoint Nicole the social worker for the palliative care service", she admitted

her testimony had been false. Serra's later performance evaluation identified her as the

"dedicated palliative care Social Worker" -- emphasizing the completely different

position of palliative care social worker than that of a regular social worker (Pl. 56.1 Stmt

¶27).

Plaintiff advised Serra that she was not angry with Serra and Serra "never felt that

she [Plaintiff] was angry at [her] for the situation. It was the kind of thing that was

decided that was out of [Serra and Plaintiff's] hands" (Pl. 56.1 Stmt ¶28). Maura Del

Bene, the nurse practitioner assigned to the palliative care program also confirms after

Serra's appointment to the palliative care service, Newmark expressed that she

(Newmark) did not have any hard feelings towards Del Bene and Del Bene's relationship

with Newmark continued to be cordial as it was before (Pl. 56.1 Stmt ¶29).

## VI.    Plaintiff's Complaints Regarding Age Discrimination

### a. August 16 or 17, 2006 Complaint

Within approximately a day or two of Newmark's meeting with Magone on

August 15th, Newmark went to Human Resources and met with Orsaia to complain. In

that connection, Newmark told Orsaia that Magone said she decided to appoint Serra

because she was younger than Newmark and could handle the job better than Newmark could (Pl. 56.1 Stmt ¶30).

Orsaia then told Newmark that "that there have been other people that have come here to complain about Cathy Magone" implying there were previous complaints concerning Magone's discriminatory conduct (Pl. 56.1 Stmt ¶31). Specifically, Orsaia advised that social workers and case managers had complained. But then, despite the fact that Orsaia was not present at the August 15th meeting, she also tried to justify Magone's statement by stating that "sometimes people filter things out differently". Moreover, Orsaia never reduced what Newmark told her in writing either then or later (Pl. 56.1 Stmt ¶31).

At the conclusion of the meeting, Newmark inquired when all three could meet -- Newmark, Magone and Orsaia. Newmark wanted to resolve issue, to continue doing her job without any interference and to let know Orsaia about how she (Plaintiff) felt about the age discrimination (Pl. 56.1 Stmt ¶33).

Shortly after, Orsaia communicated with Magone. Orsaia spoke to Magone alone and did not take any notes. According to Orsaia, Magone claimed that she had advised Newmark said Nicole was younger in her career (Pl. 56.1 Stmt ¶34).

b. *Plaintiff's Second Complaint*

According to Orsaia, she then communicated with Newmark regarding Magone's explanation about her earlier conversation with Newmark. Newmark denied to Orsaia that Magone ever claimed that Nicole was younger in her career (Pl. 56.1 Stmt ¶35). Following Orsaia's discussion with Plaintiff, they agreed that Orsaia, Plaintiff and Magone would meet (Pl. 56.1 Stmt ¶36).

Orsaia then communicated with Magone to advise her that she had spoken to Plaintiff and provided Magone's explanation but Plaintiff disagreed with it (Pl. 56.1 Stmt ¶37).

Following Plaintiff's initial meeting with Orsaia to complain about Magone's discriminatory-based decision, Magone was less cordial and dismissive of Plaintiff than she (Magone) had previously been. Magone did not make eye contact with Plaintiff, did not meet with Plaintiff privately and ignored Plaintiff when she asked a question or raised an issue at staff meetings (Pl. 56.1 Stmt ¶¶38, 50).

Magone also overlooked Plaintiff in connection Plaintiff's receipt of the Big Heart award which was a rare award that an employee of Lawrence received as a result of a patient or staff member having nominated that employee. During Plaintiff's employment at Lawrence during 2006, she received two big heart awards -- one in April and the other in September (Pl. 56.1 Stmt ¶39). In or about September 2006, Plaintiff was nominated by a co-worker for the award and in fact received the award. On the same day Plaintiff's award was issued, Serra also received the same award. While acknowledging and congratulating Serra's receipt of the award, Magone failed to even acknowledge Plaintiff's receipt of the same award even though Magone was notified and had Plaintiff's award in her hand (Pl. 56.1 Stmt ¶40).

*c. Plaintiff's September 13, 2006 Complaint*

Following Newmark's meeting with Orsaia in or about August 16th or 17th about Magone's discriminatory statement, on September 12, 2006, Plaintiff attempted to schedule a meeting with Orsaia and Magone, advising:

Hi, Pat [Orsaia], this is a follow up to our meeting of approximately two weeks ago. Please let me know what the status is of the proposed meeting with Cathy Magone where we were going to discuss several issues, including most importantly, the issue of possible ageism. This is troublesome and needs to be addressed in a timely manner. Thank you for your anticipated response (Pl. 56.1 Stmt ¶41).

On September 13, 2006, Plaintiff sent another email and then met with Orsaia. At the meeting, Plaintiff inquired that she had not heard from anyone concerning scheduling the meeting with both Orsaia and Magone (Id.). In response, Orsaia indicated there were some scheduling conflicts (Pl. 56.1 Stmt ¶42).

### d. *Plaintiff's September 28, 2006 Complaint*

When Plaintiff had not heard from Orsaia by September 28, 2006, she emailed Orsaia again requesting a meeting with Orsaia and Magone in order to "put some closure on the issues . . ." they had previously discussed (Pl. 56.1 Stmt ¶43).

There was a meeting then held the same day with Newmark, Orsaia and Magone in Orsaia's office. At the meeting Plaintiff stated she had an issue with Magone making a statement that Serra was younger and therefore better able to do the job (Pl. 56.1 Stmt ¶44). Magone then angrily denied making the statement. Magone stated that she told Plaintiff that Serra was young and could take in things in like a sponge (Pl. 56.1 Stmt ¶45).

Magone then mentioned to Plaintiff for the first time that her (Plaintiff's) performance was not up to "par" and she brought up Plaintiff's attendance. Plaintiff advised Magone that she had not brought up that fact before the meeting and inquired why it was being brought up at this meeting -- the purpose of which was to discuss Magone's age discriminatory comments (Pl. 56.1 Stmt ¶46). Magone also advised Plaintiff that her probation was being extended. When Plaintiff asked for how long it was being extended, Magone told her that "that was for her to

10

know" (Pl. 56.1 Stmt ¶47). The meeting ended with no resolution. As Plaintiff was exiting

Orsaia's office, Magone asked to meet with Orsaia privately (Pl. 56.1 Stmt ¶48).

     e. *Newmark's September 29, 2006 Email Complaint*

On Friday, September 29, 2006, Plaintiff sent an email only to Orsaia to follow up on the

day's before meeting with Orsaia and Magone. Plaintiff's September 29, 2006 email to Orsaia

states in pertinent respect:

> Hi Pat,
>
> Thank you for taking the time to meet with Cathy Magone and me, I appreciate your assistance.
>
> There are a few issues that were raised in the meeting that I would like clarified, as follows:
>
> 1. I would like to know how long my probation has been extended, this should not be held from me until I receive my performance evaluation.
>
> 2. When I asked Cathy [Magone] what was the basis for my probation being extended, she stated it was because of attendance. In our meeting yesterday, she alluded to the fact that there are work issues, but would not state what these are until she goes over my evaluation with me. This was a surprise to me, as she has never brought up any work issues until our meeting yesterday. I cannot remedy issues if they are not brought to my attention, and should not have to wait until my evaluation to hear what the work issues are.
>
> 3. When we went over the issue of ageism, Cathy denied that she said 'Nicole was younger and could handle the job better than I could.' She stated that she did say that Nicole was '[y]oung and could take things in like a sponge.' This statement is tantamount to saying that I am old and [am] not able to absorb information as well. Cathy does not know what my capabilities are, she has not taken the time to learn about who I am and know exactly [what] my strengths are.
>
> . . .[H]owever, I still contend that Cathy is holding my age against me. . . her comments and actions during the past few months in regard to me have been dismissive and non-supportive. I cannot pinpoint when things changed between Cathy and I but there has been a palpable change in her interactions with me, and this makes me feel very vulnerable and insecure about my job at LHC (Pl. 56.1 Stmt ¶49; 9/29/06 Email, Nicaj Aff. Ex. 6).

Orsaia confirmed that the first two sentences of paragraph numbered "3" of the email Plaintiff sent to her was an accurate statement as to what Magone said at the September 29th meeting, notably that Magone stated Serra was "'[y]oung and could take things in like a sponge'". Moreover, Orsaia never disputed what was said at the September 28th meeting as recollected by Plaintiff in her September 29, 2006 meeting (Pl. 56.1 Stmt ¶50).

With respect to Plaintiff's recollection as contained in the September 29th email relating to the meeting with Orsaia and Magone, Orsaia never denied Magone's statements (Pl. 56.1 Stmt ¶51).

Orsaia then forwarded Plaintiff's September 29th email to Magone who on Wednesday, October 4, 2006, responded to Newmark claiming that she described as a Serra as a "new, young social worker needing to have a project of her own". However, in Magone's October 4, 2006 email, she did not deny saying that Serra was "young and could take things in like a sponge" at the September 29, 2006 meeting (Pl. 56.1 Stmt ¶52).

On October 5, 2006, Magone sent Orsaia an email on October 5, 2006 at 10:50 a.m. advising Orsaia that Plaintiff had received Magone's email the previous evening at 5:30 p.m. and had not yet responded or spoken to Magone about it (Pl. 56.1 Stmt ¶53).

**VII.    Six Days After Newmark's Meeting with Orsaia and Magone to Complain About Age Discrimination and Five Days After Newmark's September 29th Email Complaining of Discrimination, Plaintiff's Employment is Terminated**

On October 5, 2006, in Magone's office with Orsaia present, Plaintiff's position was terminated by Magone. At the meeting, Orsaia claimed that Plaintiff was not a good fit and "they" were terminating her employment (Pl. 56.1 Stmt ¶54).

Orsaia then advised Plaintiff that it was not working out and that she was to get her belongings together, empty her office, leave the premises immediately and she had an hour in which to do so. Orsaia then handed Plaintiff termination papers at which point Magone threw Plaintiff's evaluation at her (Plaintiff) (Pl. 56.1 Stmt ¶55.).

Newmark was then told by Orsaia that Magone would be the person escorting her out of the building. At that point, Newmark requested that a security guard escort her instead because she did not trust Magone because Newmark had previously observed that Magone was very volatile with employees (Pl. 56.1 Stmt ¶56). Orsaia advised Plaintiff that the security guard would not escort Plaintiff -- that Magone would instead, which was very unusual (Pl. 56.1 Stmt ¶57).

According to Magone, she "explored" with Orsaia terminating Plaintiff's employment one week prior to September 28th meeting. Magone confirmed however, she never documented that particular exploration (Pl. 56.1 Stmt ¶58). In fact, Magone made her decision to terminate Newmark's employment only following the September 28th meeting (Pl. 56.1 Stmt ¶59). There was nothing new that transpired in connection with Plaintiff's performance from the September 28, 2006 meeting in which Magone advised Plaintiff that her probationary period was being extended to Plaintiff's termination on October 5, 2006 (Pl. 56.1 Stmt ¶60).

Magone has admitted that **the decision to terminate** Newmark's employment was in part based on her "**reaction to a business decision to assign another team member [Serra] to our palliative program was unacceptable**" (Pl. 56.1 Stmt ¶61) (emphasis added).

Following her termination, Plaintiff corresponded with Galloway who advised her that she had complained about Magone's treatment of her to Orsaia on at least two occasions and that Basile also went to see Orsaia over a number of years with the same concerns. Additionally,

13

case managers went Orsaia to complain as a group about Magone (Pl. 56.1 Stmt ¶62).   Moreover

other employees have complained about Magone's treatment of them.  Following Newmark's

termination, she received an email from Katherine Anderson, the Clinical Educator for Oncology

at Lawrence voicing her support of Newmark (Pl. 56.1 Stmt ¶63).

## VIII. Others Employees' Complaints Concerning Case Managers and Magone

Defendants' claim that Plaintiff was terminated due in large to part to her interaction with

case managers is specious at best in view of difficulty case managers had working with anyone at

Lawrence before and after Plaintiff's termination.

In that connection, Diane Lance the Assistant Director of Case Management approached

Orsaia to express concern about the "dysfunction" among the case managers (Pl. 56.1 Stmt ¶64).

Serra confirmed that case managers are very difficult to work with case managers and is aware

that at least some of them complained about her.  In an email dated July 19, 2006, Serra

corresponded with Del Bene thanking her for understanding her "bad attitude last week".   In

another email, Serra expressed to Del Bene that "it is often hard to work in this environment

when you don't know who you can trust" (Pl. 56.1 Stmt ¶65).  Serra was referring to case

managers because "some of them are very difficult to work with and they are more interested in

talking about other people's work and this and that, versus paying attention to their own

situations" (Id.).  Moreover case managers regularly disclosed confidential information

concerning patients in public (Serra Dep. 38-39, Nicaj Aff. Ex. 26)

Del Bene complained about how things were handled in the units and in particular, she

complained about cases managers.  Del Bene also complained about her role in working with the

case managers and the overall difficulties in working with them  (Pl. 56.1 Stmt ¶66)

Furthermore, in an evaluation done of Magone's performance in February 2004, which was incidentally prior to Plaintiff's employment, it was admitted by Magone that she had been unsuccessful in eliminating staff unrest because of "personality issues" and later clarified that employees -- case managers and social workers -- were not getting along (Pl. 56.1 Stmt ¶69). Moreover, Magone confirmed "[s]ocial workers and case managers historically have issues with one another". Well after Plaintiff's termination, as of February 2008, Magone admitted that staff unrest is ongoing issue (Pl. 56.1 Stmt ¶70).

As for Magone, on number of occasions, Del Bene expressed to Newmark that Magone did not how to communicate with people (Pl. 56.1 Stmt ¶67). In particular, Del Bene commented to Plaintiff on several occasions about the fact that Magone's behavior "was really out there" (Id.). Similarly, Serra expressed to Del Bene that Magone lacked an understanding of what the social work role was and how it was to be utilized within the case management department (Pl. 56.1 Stmt ¶68 ). For example, on May 23, 2006, Plaintiff sought to follow up on a job description meeting she had with Magone about reducing the social work functions in writing (Id.). Magone did not recall whether she ever responded to Plaintiff in writing (Id.).

## ARGUMENT

## STANDARD PRINCIPLES

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a "genuine issue" exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor. Guilbert v. Gardner, 480 F.3d 140, 145

(2d Cir. 2007). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Furthermore, summary judgment should not been granted to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent. *See* Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir.1994); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

## POINT I

### THERE ARE MATERIAL FACTS, IF BELIEVED, TO PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S ADEA AND SECTION 296 DISCRIMINATION CLAIMS

"To establish a prima facie case of age discrimination under the ADEA, a claimant must demonstrate that: 1) [s]he was within the protected age group; 2) he was qualified for the position; 3) [s]he was subject to an adverse employment action; and 4) the adverse action occurred under 'circumstances giving rise to an inference of discrimination.' " Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003), *quoting* Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001).

Here there is no dispute that Plaintiff who is sixty-two years old is within the protected group. The ADEA requires plaintiff to establish that she was a member of the statutorily age-protected group of 40 to 70 years old. Terry, 336 F.3d at 137-38. At this stage, plaintiff's burden is minimal. Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997). Furthermore there is no dispute that Newmark was in fact qualified for the position.

**A. The Material Facts Show that Plaintiff Suffered Adverse Employment Action**

The Second Circuit has found that a plaintiff has shown adverse employment action upon a showing that there is material change in the terms and conditions of employment. <u>Kassner v. 2nd Avenue Delicastessen, Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007), *quoting* <u>Galabya v. New York City Bd. of Educ.</u>, 202 F.3d 636, 639 (2d Cir. 2000) (further citations omitted). Adverse employment actions can be a demotion, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, **or other indices ... unique to a particular situation.**" <u>Galabya</u>, 202 F.3d at 640, *quoting* <u>Crady v. Liberty Nat'l Bank & Trust Co.</u>, 993 F.2d 132, 136 (7th Cir. 1993) (emphasis added).

In failing to appoint Newmark to the palliative care service, she suffered adverse employment action. When Plaintiff was interviewed, Magone advised her that she would be part of the palliative care service -- that was one of the specific terms of employment. In short, Magone significantly diminished Plaintiff's material responsibilities which had been agreed upon at Plaintiff's interview with Magone. Moreover, Plaintiff accepted the position because she would be assigned to the palliative care service.

Apparently trying to minimize the adverse nature of Serra's appointment over Plaintiff to the position of Social Worker dedicated to the palliative care service, Magone initially denied that she ever advised Plaintiff that she was appointing Nicole Serra to the palliative care service (Magone Dep. 82, Nicaj Aff. Ex. 24). When confronted with her notes of August 15, 2006, Magone was forced to admit that her testimony had in fact been false and that she advise Newmark of her decision to appoint Serra the Social Worker for the palliative care service (Magone Dep. 82-83; 8/15/06 Notes, Nicaj Aff. Ex. 1). Serra's later evaluation identifies her as the social worker dedicated to the palliative care service (Serra Evaluation, Nicaj Aff. Ex. 12).

Denial of transfers may also constitute adverse employment actions.  Beyer v. County of Nassau, 524 F.3d 160, 164 (2d Cir. 2008).

Moreover, admittedly Magone did not select Plaintiff for the training which involved travel to Ohio.  Furthermore, the Ohio trip was not just simply a business trip as stated in Point II of Defendants' Memorandum of Law – it was training as admitted by O'Hare, Del Bene and Serra (Del Bene Dep. 28-29; O'Hare Dep. 12; Serra Dep. 29; Magone Dep. 82).  In short, Serra who is more than thirty years Plaintiff's junior was going  be the "lead person" in palliative care because she was going for the training (Magone Dep. 82).  As the case here, a denial of a training opportunity qualifies as adverse action.  See Jute v. Hamilton Sundstrand Corp., 402 F.3d 166, 176-77 (2d Cir. 2005).

## B. The Disputed Material Facts Show That Magone Subjected Newmark to Discrimination By Reason of Her Age

Defendants apply the wrong analysis in determining whether there is sufficient evidence of discrimination.  Defendants claim Plaintiff has failed to establish an inference of discrimination (Defendants' Memorandum pages 21-22).  The inference of discrimination requirement is only employed where there is **no direct evidence** of discrimination.  See Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 187 (2d Cir. 2006).

Thus, notwithstanding Defendants' baseless assertion, there is no need to delve into evaluating whether there is an inference of discrimination since there is direct evidence of Magone's discriminatory animus.  "A plaintiff may establish a claim of age discrimination through 'direct evidence, such as statements by the employer that age was the reason for the discharge, or through proof of circumstances from which an inference of age discrimination may

be drawn.' Fisher, 70 F.3d at 1450, *quoting* Haskell v. Kaman Corp., 743 F.2d 113, 119 (2d Cir.1984).

In short, Plaintiff produced proof of direct evidence of Magone's discriminatory animus. In that connection, on August 15th Magone advised Newmark she was appointing Serra to the social worker position dedicated to palliative care service because Serra was younger than Newmark and could handle things better than Newmark (Pl. 56.1 Stmt ¶26). Importantly, Magone found herself in proverbial hot water at the September 29, 2006 meeting with Orsaia and Newmark when she denied making the earlier statement albeit admitting she (Magone) appointed Serra because she was "[y]oung and could take things in like a sponge" (Pl. 56.1 Stmt ¶49). Indeed, Orsaia admitted that Magone made the statement at the meeting (Orsaia Dep. 87, Nicaj Aff. Ex. 25).

Consequently, the cases cited to by Defendants, Figueroa v. New York City Health Hosp. Corp., 500 F.Supp.2d 224, 236 (S.D.N.Y. 2007), Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) and Boyce v. Bank of New York, 2006 U.S. Lexis 20278 do not apply for those cases relate to circumstances where there was no direct evidence of discrimination like here. Defendants try to cite those cases in support of the fact that Magone was the same person who hired Plaintiff presumably knowing her age and was the same person who failed to appoint her to the social worker position for palliative care service. But Magone only hired Newmark based on Galloway's strong recommendation of Plaintiff and based on Magone's review of other candidates' resumes. Magone admitted that none of the other candidates were as qualified as Plaintiff so she did not bother to interview anyone else apart from Newmark thereby forcing her to hire Plaintiff.

In <u>Sklaver v. Casso-Solar Corp.</u> 2004 WL 1381264 *5-6 (S.D.N.Y.) (Conner, D.J.), the district court in any event rejected defendants' same-actor hiring and firing assertion by distinguishing the Second Circuit's decision in <u>Grady</u>:

> "Moreover, although the Second Circuit's decision in *Grady* . . . states that 'when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute her invidious motivations that would be inconsistent with the decision to hire' it also qualifies that proposition by stating that '[t]his is especially so when the fire has occurred only a short time after the hiring.' 130 F.3d 560. In *Grady* the plaintiff was hired as an alarm dispatcher trainee. She subsequently had difficulty with the company's training program and was fired a week and a half after she was hired into that position. Id. *at 558-60.* 2004 WL 13811264 at *6.

As an explanation/dispute as to Plaintiff's version of events on August 15th, Defendants disingenuously also claim Magone "paid [Plaintiff] the courtesy of notice of her decision to send Serra on the site visit" (Defendants' Memorandum p. 21). On the contrary, Magone was anything but courteous for failing to consult with Plaintiff who was Serra's direct supervisor prior to Serra's appointment to the social worker position dedicated to the palliative care service. Instead Magone told Plaintiff of her decision and made it clear that "the decision was made that's it" (Pl. 56.1 Stmt ¶26). When Plaintiff asked on what basis the decision was made, Magone matter-of-factly told her that Serra is "younger than you are and can take things in better than you can" (Id.).

Incidentally, the Defendants falsely assert that "Newmark then ignored all subsequent efforts by Magone to explain her decision further as nothing more than an exercise in 'covering her ass'" (See Def. 56.1 Stmt 204 and Plaintiff's Response). Paragraph 204 of Defendants' 56.1 Statement is closer to the truth about what Plaintiff actually stated: "Plaintiff considered Magone's [October 4, 2006] email to be an attempt by Magone to 'cover her ass' based on Magone's treatment of others and Newmark's distrust of her." Put differently, Magone's email

was not a genuine explanation but rather an attempt to "cover her ass" because the email came one day before Magone terminated Plaintiff's employment and Magone had never previously responded to Plaintiff's concerns (Pl. Response to Def. 56.1 Stmt ¶204).

In any event, Defendants' attempt to skew the disputed facts in their favor further evidence the hotly disputed issues of material fact which preclude summary judgment on Plaintiff's age discrimination claims.

## POINT II

### THERE ARE AMPLE ISSUES OF MATERIAL FACT, WHICH PRECLUDE SUMMARY JUDGMENT ON NEWMARK'S RETALIATION CLAIMS

In view of the fact that Newmark's position was terminated six days after her last protected activity, Plaintiff has demonstrated a *prima facie* case of retaliation.

A *prima facie* case of retaliation is established where a plaintiff shows (1) she participated in protected activity; (2) there was an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.' " Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004) *quoting* Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998) (further quotations omitted).

Defendants do not dispute that Plaintiff has satisfied all three requirements. In particular, Defendants do not dispute that Plaintiff engaged in protected activity when she on multiple occasions, commencing in or about her August 17th or 18th expressed concern to Orsaia relating to Magone age discriminatory comments. Nor do the Defendants dispute that Plaintiff expressed these concerns to Orsaia on September 13th, September 28th or September 29th.

21

**A. The Material Facts Establish that there is both Direct and Indirect Evidence of a Casual Connection Between Newmark's Protected Activity and the Termination of Her Employment**

As to the final requirement of an ADEA retaliation claim, a causal connection may be shown either through direct evidence of retaliatory animus or through circumstantial evidence. *See* Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir.1990). Circumstantial evidence of a connection may be shown for instance by establishing that the protected activity was followed by retaliatory action or through evidence of disparate treatment of employees who engaged in similar conduct. 899 F.2d at 209.

At bar, with respect to causation -- there is both direct evidence and indirect evidence of retaliation of Magone's retaliatory animus. Here, Newmark's last protected activity occurred on September 29, 2006 -- five days prior to her termination of employment on October 5, 2006. Thus, the timing alone here raises an issue of material fact as to whether Plaintiff's termination was in retaliation for having complained about discrimination. *See* Feingold, 366 F.3d at 156-57.

In that connection, if the time that elapses between the protected activity and the adverse action is brief enough, nothing more is needed to satisfy the causation requirement. *See* Quinn, 159 F.3d at 769 (finding that an employee discharged less than two months after filing a complaint with employer and ten days after filing complaint with SDHR had established a causal connection); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir.1996) (finding an inference of causation where twelve days elapsed between complaint and discharge).

Moreover, there is direct evidence of Magone's retaliatory animus. Here, Magone announced the reason for Plaintiff's termination in her memorandum of October 5, 2006. In that connection, Magone's decision was based – at least in part -- to Newmark's "reaction to a business decision to assign another team member [Serra] of our palliative care program was

22

unacceptable." (Def. Ex. 41; Pl. Ex. 9). Precisely what Magone meant by that is question of fact that is best left for a jury to determine.

Such statements may constitute direct evidence of retaliation when made by a decision-maker in the adverse employment action, where there is a close nexus between the comments and the action. *See* Rose v. N.Y. City Bd. of Educ., 257 F.3d 156, 162 (2d Cir.2001) (finding discriminatory motive where comments were made to plaintiff "on more than one occasion by her immediate supervisor, who had enormous influence in the decision-making process").

In the instant case, Magone prepared the termination memorandum on the same day Plaintiff was in fact fired and just six days after Plaintiff's last protected activity. Based on both direct evidence and circumstantial evidence of retaliation, summary judgment on Plaintiff's ADEA and Section 296 retaliation claims are impossible. *See* Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir.1995) ("In light of the combination of circumstantial and direct evidence of retaliation that [plaintiff] presents, we conclude that his claim, however valid it may ultimately prove to be, is sufficiently strong to defeat the motion for summary judgment.").

## B. The Material Facts Demonstrate that Defendants' Stated Reasons for Terminating Plaintiff's Employment are Pretextual

Defendants' assorted excuses for terminating Plaintiff's employment fall short and are clearly pretextual. Incidentally, contrary to Defendants' claim that Plaintiff acknowledged she was not sure that she was suited for the case management model (Defendants' Memorandum p. 26), Plaintiff denies that she ever advised Orsaia that she was not suited for in-patient social work (See Pl. Response to Def. 56.1 Stmt ¶134).

1.  The So-Called Complaints Regarding Plaintiff Are Clearly Pretextual

Interestingly, while Defendants claim that Plaintiff's termination was based on employees' complaints -- Magone failed to identify that as a reason for Plaintiff's termination in her October 5, 2006 termination memorandum (Def. Ex. 41). The inconsistent reasons set forth for why Magone terminated Plaintiff's employment also dictates that Defendants' veracity – particularly Magone's -- is clearly an issue. *See* Carlton v. Mystic Transportation, Inc., 202 F.3d 129, 137 (2d Cir. 2000).

In any event, Defendants' reliance on the so-called complaints made by the case managers relating to Plaintiff's performance in August and September 2006[2] – most of them were created by Magone after she learned Newmark had complained to Orsaia about age discrimination. *See* Quinn, 159 F.3d at 770 (holding that a strong temporal connection between the plaintiff's complaint and other circumstantial evidence is sufficient to raise an issue with respect to prextext) *abrogated in part on other grounds,* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002). In *Quinn*, the Second Circuit found that plaintiff the

> "has proffered evidence suggesting a strong temporal correlation between her complaints to the Company and the [Division of Human Rights]. . . on the one hand, and her termination, on the other. Nearly all of the record evidence supporting the Company's asserted non-retaliatory reason for discharge both was generated by two of Quinn's alleged harassers. . .and followed her initial inquiry with the DHR regarding sexual harassment. Construing the record most favorably to [plaintiff], as we are required to do . . .we conclude that there is a sufficient basis for a trier of fact to doubt the persuasiveness of the company's proffered evidence and ultimately to find that the reasons offered by the Company for [plaintiff's] dismissal were pretextual.

---

[2]Defendants claim that Magone received complaints in July, August and September (Defendants Memorandum p. 25) but they then claim Magone received complaints in August and September about Plaintiff (Defendants' Memorandum p. 26). In any event, as set forth in Plaintiff's response to paragraphs "92", "93" and "94" of Defendants' 56.1 Statement, if Defendants are suggesting that Plaintiff's July 20th meeting was about such complaints, Plaintiff denies there were any as does Magone. In fact, Plaintiff requested the July 20th meeting with Magone and directly asked Magone whether their discussion at the meeting was a "warning" by Magone. Magone emphatically denied that it was (Pl. Response to Def. 56.1 Stmt ¶¶92-94).

Id. at 770.   But the disputed and undisputed record shows that the case managers were difficult.   The Assistant Director of Case Management complained to Orsaia about the "dysfunction" of the case managers" (Pl. 56.1 Stmt ¶64).

Additionally, Serra who was still working as a social worker in 2008 also confirmed that some of the case managers complained about her (Serra).   As Serra stated, some of the case managers are difficult to work with and they constantly gossip about other employees' work, do not do their own work and impermissibly disclose confidential patient information publicly (Pl. 56.1 Stmt ¶65; Serra Dep. 38-39, Nicaj Aff. Ex. 26).   Moreover, Del Bene made many complaints about the way in which case managers handled matters and the difficulties Del Bene had in working with them (Pl. 56.1 Stmt ¶66).

Consequently, even Magone was constrained to admit that in 2004 -- prior to Plaintiff's tenure, there were personality issues in the departments under her supervision.   Simply put, employees were not a getting along.   There was staff unrest among social workers and case managers (Pl. 56.1 Stmt ¶69).   Magone additionally confirmed "social workers and case managers historically have issues with one another" (Pl. 56.1 Stmt ¶70).   As of February 2008, Magone admitted that staff unrest among social workers and case managers was an ongoing issue (Id.).

In any event, Plaintiff's receipt of two big heart awards within her probationary period belies Defendants' claims as to her performance and her interaction with employees and patients. The receipt of big heart award is very rare and is only issued in exceptional circumstances – thus disputing Defendants' claims concerning Newmark's performance.   Here Plaintiff received two such awards during her probationary period undermining Defendants' claims as to Plaintiff's performance and her demeanor.   When Plaintiff received the big heart award in September 2006,

it was as a result of a co-worker's nomination. Incidentally, Magone failed to acknowledge Plaintiff's receipt of the award in September 2006 (after Plaintiff initially complained to Orsaia about the age discriminatory comments) despite the fact Magone acknowledged and congratulated Serra with receiving the same award that day and despite the fact she had Plaintiff's award in her hands.

Furthermore, had Plaintiff not been a good worker, she never would have been rehired at Lawrence. As it was, Plaintiff's former supervisor at Lawrence, Denise Galloway strongly recommended Newmark to be hired because she was a good employee. Indeed, in view of Newmark's exemplary work performance at Lawrence both as a social worker and as a student intern prior to her employment there in 2006, Defendants' claims concerning Plaintiff's performance and her demeanor in 2006 are utterly despicable.

Defendants' attempt to portray Plaintiff as an openly angry employee after Magone's discriminatory selection of Serra is further disputed in a number of ways. First, Serra confirmed that Newmark specifically advised Serra that she was not angry at her and she and Plaintiff agreed that the decision "was out of [their] hands" (Pl.56.1 Stmt ¶28). Moreover, Del Bene admitted that Newmark expressly told her that she did not have any hard feelings towards her and Newmark continued to be cordial as she had before (Pl.56.1 Stmt ¶29). Furthermore, Magone admitted that following Plaintiff's complaint, Plaintiff never exhibited anger in her presence -- belying Defendants' claims that Plaintiff was angry.

Notwithstanding the foregoing admissions, Plaintiffs adamantly denies she displayed anger or any other disparaging or aggressive behavior in public in the workplace. Plaintiff admits that she privately communicated to her family and to those individuals who she at time

believed to be trusted colleagues about Magone failing to appoint her to the social worker position in the palliative care program by reason of her age.

Furthermore, if there was anyone who exhibited anger it was Magone -- not Plaintiff. At the September 28, 2006 meeting, Magone became angry (Pl. 56.1 Stmt ¶44). Indeed, after learning of Plaintiff's initial age discrimination complaint to Orsaia in or about August 21, 2008, Magone became less cordial and dismissive of Plaintiff than she had previously been (Pl. 56.1 Stmt ¶38). Furthermore, Magone did not make eye contact with Plaintiff, did not meet with her privately and ignored Newmark when she asked a question or raised an issue at staff meeting (Pl. 56.1 Stmt ¶38).

Defendants were well aware of Magone's shortcomings as a supervisor for Orsaia admitted to Newmark during the initial meeting in which Newmark complained about Magone's discriminatory selection of Serra -- a number of employees had gone to Orsaia to complain about Magone (Pl. 56.1 Stmt ¶31).

Defendants' attempt to place the blame squarely on Plaintiff is thus just another feeble albeit transparent attempt to mask their own retaliatory animus after the September 28th meeting. In Newmark's September 29th email addressed Orsaia, which was not copied to Magone, Newmark made it clear that she was continuing to pursue her claim that Magone had failed to appoint her because of her age. Instead of holding Plaintiff's confidence as the Director of Human Resources, Orsaia incredibly sent a copy to Magone who self-servingly responded to it the day before she terminated Newmark's employment.

Furthermore, Defendants' actions on the day Plaintiff's employment was terminated further evidence the pretexual nature of their explanations. At the termination meeting, Orsaia claimed Newmark's position was terminated because she was not a good fit whereupon Magone

threw Newmark's final evaluation at her. Contrary to past practice and despite Plaintiff's request that a security guard escort her to her office to retrieve personal items from her office, Orsaia denied Newmark's request. Magone instead escorted Newmark to her office and eventually to the hospital exit.

Incidentally, the so-called complaints came at a time when there were not enough social workers. Shortly before Plaintiff was hired, Galloway and Basile in fact had both complained to Orsaia and Magone of the social worker shortage when there were three social workers working at Lawrence full-time as compared to Plaintiff and Serra who were expected to perform the work of three -- if not more-- social workers if Galloway and Basile's concerns were valid.

2. <u>Defendants' Claim that Plaintiff's Probationary Position was Terminated Due to Unscheduled Time Off is Pretextual</u>

Next, Defendants claim one of the other reasons for Plaintiff's termination is the fact that Plaintiff had four unscheduled time off "episodes". While there is some dispute as to whether there were three or four incidents of unscheduled time off -- the fact remains that Defendants are using this time attendance issue as yet another excuse for Plaintiff's termination. Indeed, Defendants' assertion as to unscheduled time off is contradicted by the policy which states that "unscheduled time off of five or more occurrence in a 12-month period **may be** considered excessive" -- clearly enabling the supervisors to make that determination on a case-by-case basis.

It is disingenuous for Defendants to claim that Plaintiff's three -- or even four unplanned absences were excessive in view of the fact that Magone does not dispute that Newmark was legitimately absent by reason of illness on these occasions (Pl. 56.1 Response to Def. 56.1 Stmt ¶170). Furthermore, in Newmark's capacity as a social worker, she came into direct daily contact with ill patients at Lawrence. It is entirely conceivable that she became ill by reason of

28

these interactions. Viewed differently, had Newmark worked while she was ill and exposed \ patients whose immune systems were most certainly weak due to injury or illness – that would have been unconscionable![3]

   3. Given the strong temporal connection between Newmark's protected activity and the termination of her employment, the material disputed facts show that Defendants' Proffered Reasons are Pretextual

Where a plaintiff "has proffered evidence supporting a strong temporal connection between her involvement in protected activity on one hand, and instances (albeit, not actionable) of retaliation on the other" and construing "the record in the light most favorable to [plaintiff]. . .there is a sufficient basis for a trier of fact to doubt the persuasiveness of [defendant's] preferred evidence and ultimately to finding that the [legitimate, non retaliatory] reasons offered by [defendant]. . . were pretextual." Jute, 420 F.3d at 180.

Here, in view of the Jute decision, Newmark has amply established that Defendants' stated reasons are pretextual by virtue of the very close temporal connection between Newmark's protected activity and her termination and Magone's admissions that one of the reasons for the termination was Newmark's "reaction to a business decision to assign another team member [Serra] to our palliative care program was unacceptable" (Def. Ex. 41).

In Jute, the plaintiff had provided two statements to investigators for a co-worker and the company in 1994 respectively stating she witnessed another co-worker leaving denigrating flyers in the company restroom. Thereafter the co-worker filed a lawsuit in which the plaintiff's earlier

---

[3]Another reason asserted by Magone in her October 5, 2006 termination memorandum was because Plaintiff had not made any progress in developing the Mental Health Training Program. That claim is clearly pretextual in view of the fact Magone clearly did not perceive the Mental Health training important because Magone as of February 20, 2008 (when she was deposed), did not know who received mental health training, the number of people who were trained, how long the training lasted, where the training took place, whether anyone else was assigned to replace Plaintiff in the training and whether the training had ever been completed! (Pl. Response to Def. 56.1 Stmt ¶¶83-84). Magone's claim as to why Plaintiff was terminated was specious at best.

statements to investigators were put in the record and the plaintiff agreed to testify in her co-worker's lawsuit.  On July 9, 1998, the plaintiff was named as a witness during the co-worker's deposition.  The following day the plaintiff was removed from the team that was upgrading the defendant's computers.  Plaintiff's position was terminated two years later along with nineteen other employees in the same grade as part of a post-merger reorganization during a deposition. Despite the grade-wide lay-off, the Second Circuit still found there were questions of fact as to whether Defendant retaliated against plaintiff by terminating her employment based on earlier demotion of Plaintiff the day after her co-worker named her as a witness.  Id. at 180.

In the instant case, given the strong temporal connection of Plaintiff's last protected activity of September 29 and her termination of October 5, 2006, Plaintiff has amply provided evidence that Defendants' stated reason for the termination were prextexual.  Furthermore, at the September 28th meeting, Defendants notified Newmark of their intent to retaliate because although that meeting was for the purpose of addressing Magone's earlier discriminatory statements, Magone chose that meeting instead to advise Plaintiff that her probationary period was being extended.

## CONCLUSION

Defendants' motion for summary judgment should in all respects, be denied.

Dated: White Plains, New York
September 2, 2008

LOVETT & GOULD, LLP

By: _____
Drita Nicaj (DN 0966)
Attorneys for Plaintiffs
222 Bloomingdale Road
White Plains, New York 10605
914-428-8401