UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

CAROLE NEWMARK,

                      Plaintiff,                    07 CIV. 2861 (CS)

      -against-                                AFFIDAVIT OF
                                                  PLAINTIFF CAROLE
LAWRENCE HOSPITAL CENTER,           NEWMARK
PAT ORSAIA, individually, and CATHY
MAGONE, individually,

                      Defendants.

----------------------------------------------------------X

State of New York      )
                         ) ss:
County of Westchester  )

Carole Newmark, being duly sworn, deposes and says:

    1.    I am a Plaintiff in the above-entitled action. I submit this Affidavit based on my own personal knowledge and in opposition to Defendants' motion for summary judgment.

    2.    I was employed as a Senior Social Worker at Lawrence Hospital Center from March 2006 until my termination on October 5, 2006. I was previously employed at Lawrence from June 1997 until December 1998 as a clinical social worker and had performed a student internship in social work there from September 1995 until May 1996. As an intern I worked oncology patients who were terminally ill and there families. While employed at Lawrence in the late 1990s, I received favorable performance evaluations and positive feedback regarding my performance.

3.   In or about December 2005, I was recruited for another position at Lawrence by a former colleague/supervisor, Denise Galloway. At the time of Ms. Galloway's contact with me, I was working as a social worker at Phelps Memorial. While I was happy at Phelps, Ms. Galloway convinced me that that working at Lawrence again would be a wonderful opportunity for me -- emphasizing that there was a palliative care program that was in the works at Lawrence. Palliative care relates to easing pain, symptoms and stress of serious illness, including but not limited to situations relating to terminally ill patients. The purpose of such cases is to advance quality of life for patients and their families.

4.   Ms. Galloway was well aware of my interest in the area of palliative care and that I had extensive experience in mental health counseling both while at Lawrence previously and elsewhere, so I would be a perfect fit.

5.   I then interviewed with Defendant Cathy Magone who was at all times relevant, the Director of Quality and Case Management. Ms. Magone was very interested in hiring me for a position at Lawrence. In that connection, Ms. Magone assured me that while I did not have case management model experience that would not problem for me in view of the fact that I had experience prior experience in a hospital setting by virtue of my previous employment at Lawrence. Moreover, Ms. Magone also advised me that the case managers that worked at Lawrence were difficult to work with but that I should have little problem handling them in view of my mental health counseling background.

6.   During the interview with Ms. Magone, I also expressed that I would need to take time off. Ms. Magone assured me that would not be a problem and would be flexible with attendance issues.

7.  Like Ms. Galloway, Ms. Magone also advised me that Lawrence was in the process of establishing a palliative care program and if I accepted the position, I would be an actively involved in the program.

8.  Following my being hired at Lawrence, I was not formally trained by anyone as to how to do my job. Ms. Galloway, who had worked at Lawrence, had offered to train me for two weeks after her retirement with respect to the case management model, but Ms. Magone emphatically refused to consider any such proposal.

9.  Prior to my being hired, there were three social workers, including Ms. Galloway. At the time of my hire, there were no other social workers. I was expected to work with nine different case managers who would send me patient referrals in addition to other departments which included the Emergency Room. Additionally, physicians and other health care professionals employed at the hospital also referred patients to me.

10. After a month of working at Lawrence alone, Nicole Serra was hired as a social worker and commenced working in April 2006. At the time Ms. Serra was approximately 30 years old. I had previously worked with Ms. Serra at Phelps Memorial and recommended her for employment at Lawrence. Once Ms. Serra was hired at Lawrence, I was at all times relevant, Ms. Serra's direct supervisor.

11. On August 15, 2006, despite the fact that Ms. Magone previously promised that I would be part of the palliative care program, she appointed Ms. Serra to the position. When I asked her why, Ms. Magone stated that Ms. Serra was younger and could handle the job better. When I attempted to engage Ms. Magone in additional dialogue and inquire why I had not been consulted with respect to Ms. Serra's selection

3

since I was her supervisor, Ms. Magone abruptly advised me that her decision had been made and that was it.

12. Approximately a day or two later, I then communicated with Pat Orsaia -- the Director of Human Resources and relayed to her what Ms. Magone told me -- that the reason Ms. Serra was selected for the palliative care program was because was younger and could handle the job better. Without even first speaking to Ms. Magone to determine whether Ms. Magone had in fact made the statement, Ms. Orsaia tried to justify and explain Ms. Magone's statement.

13. Following the meeting with Ms. Orsaia, Ms. Magone's interaction with me changed. She was dismissive, ignored me at the meetings when I spoke and was in short -- very hostile. Furthermore Ms. Magone did not acknowledge a "Big Heart Award" I received as a result of a co-worker's recommendation in September 2006. Ms. Serra also received this award and was acknowledged during the morning line-up. Ms. Magone had both awards in her hands, but acknowledged only Ms. Serra's. Ms. Serra expressed shock that only one of us was acknowledged that day.

14. I reviewed documents, including Ms. Magone's Affidavit in connection with Defendants' attempt to have my claims in this action dismissed. While there are a number of falsehoods and inaccuracies which are contained in those documents, I want to respond to a small fraction of them because I was never asked about those allegations during my deposition.

15. Defendants' claims that I was angry and that I displayed that anger after Ms. Magone selected Ms. Serra is calculatedly false in order to justify the retaliatory actions they took against me shortly after I complained about Ms. Magone's

4

discriminatory selection of Ms. Serra. Initially, I was certainly displeased at being passed over for the opportunity to work at the palliative care program by reason of my age especially because it was one of the main reasons that I accepted a position at Lawrence but I certainly never displayed anger in public.

16. Once more, as a mental health professional, I certainly know better then to verbalize or otherwise exhibit angry behavior in the workplace. While at Lawrence, I never exhibited any angry, disparaging and/or otherwise aggressive behavior in public at the workplace before or after Ms. Magone advised me of Ms. Serra's selection. Moreover, I never communicated any feeling of anger during rounds, at workstations or in front of case managers or any other staff. Unlike Ms. Magone and some of her case managers, I never subjected subordinates, co-workers and/or supervisors to discourteous, disparaging and/or demeaning behavior, which included dismissive behavior, angry outbursts, screaming and yelling. In short, such behavior has no place in the workplace.

17. Of course, I went to Ms. Orsaia in her capacity as the Director of Human Resources and communicated with her on a number of occasions concerning Ms. Magone's age-based decision making. Furthermore, I readily admit that I privately communicated to a number of individuals, including family members and those who at the time I believed to be trusted colleagues who would keep my confidences about my disappointment that Ms. Magone had engaged in flagrant age discrimination by stating she was selecting Ms. Serra because she was young and could handle things better. As a mental health professional, I know that complaints to Ms. Orsaia and my private communications were a healthy response to Ms. Magone's discriminatory behavior heaped upon me by reason of my age.

5

18. In fact, in a later meeting with Ms. Osaia, I specifically advised Ms. Orsaia that I was not angry at the selection of Ms. Serra and was "over" my disappointment but rather that I was still greatly concerned by the fact that Ms. Magone had used my age as the sole basis for her decision to select Ms. Serra for the position.

19. For the reasons set forth in the accompanying memorandum of law, Plaintiff's Statement of Material Facts pursuant to Local Rule 56.1 and all the exhibits annexed in support and opposition to the motion for summary judgment, it is submitted that Defendants' motion should in all respects, be denied.

WHEREFORE, an order is respectfully requested denying Defendants' motion for summary judgment.

_____
Carole Newmark

Sworn to before me this
26 day of August 2008

_____
Notary Public

MARGARET ARNIM
Notary Public, State of New York
No. 4922623
Qualified in Westchester County
Commission Expires May 8, 20 10