UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CAROLE NEWMARK,                                    :

                              Plaintiff,           :        07-CIV-2861 (CS)

            -against-                              :

LAWRENCE HOSPITAL CENTER,                          :
PAT ORSAIA, individually, and
CATHY MAGONE, individually,

                                                   :
                              Defendants.
-----------------------------------------------------------x


### DEFENDANTS' REPLY MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

John P. Keil
Collazo Carling & Mish LLP
Attorneys for Defendants
Office and P.O. Address
747 Third Avenue
New York, New York 10017
Tel: (212) 758-7600

## Table of Contents

Table of Authorities .................................................................................. ii

Preliminary Statement.............................................................................1

Argument ...............................................................................................2

I.    PLAINTIFF HAS FAILED TO OFFER EVIDENCE SUPPORTING HER
      AGE DISCRIMINATION CLAIM SUFFICIENT TO DEFEAT
      SUMMARY JUDGMENT ......................................................................2

      A.    Plaintiff has failed to produce evidence that she suffered an
            adverse employment action as a result her age ...............................2

      B.    Plaintiff has failed to create an inference of age discrimination......6

      C.    Plaintiff has failed to produce evidence disputing
            Defendants' stated reasons for choosing Serra to attend
            the site visit ...............................................................................9

II.   PLAINTIFF HAS FAILED TO OFFER EVIDENCE THAT THE
      DEFENDANTS' LEGITIMATE, NON-RETALIATORY REASONS
      FOR HER TERMINATION WERE FALSE AND
      A PRETEXT FOR RETALIATION.........................................................10

      A.    Plaintiff's claim of direct evidence of retaliation is unfounded.....11

      B.    Plaintiff cannot demonstrate pretext through proximity in time....12

      C.    Plaintiff's factual claims do not create a genuine dispute of
            material fact regarding defendants' proffered reasons
            for her termination .....................................................................16

            1.    Defendants are not required to document their performance
                  concerns to avoid a later finding of pretext .......................17

            2.    Defendants' reliance on Magone's documentation
                  does not create a genuine issue of material fact................18

            3.    Plaintiff's denial of various performance problems does not
                  create a genuine issue of fact
                  regarding Magone's intentions .........................................19

            4.    Plaintiff's claims of adequate or commendable
                  past performance are insufficient to establish pretext........22

5.  Magone's alleged change in demeanor
    does not constitute evidence of pretext.............................23

6.  Plaintiff's attendance records
    do not constitute evidence of pretext.................................23

7.  Magone's lack of familiarity with the
    Disaster Mental Health Project
    is not evidence of pretext..................................................25

8.  The events on plaintiff's termination date
    do not constitute evidence of pretext.................................26

9.  Plaintiff's arguments, in aggregate,
    do not constitute evidence of pretext.................................27

Conclusion .....................................................................................29

## Table of Authorities

*Agugliaro v. Brooks Bros., Inc.*, 927 F.Supp. 741 (S.D.N.Y. 1996)......................21

*Ahmed v. Heartland Brewery*, 2007 U.S. Dist. LEXIS 53632 (S.D.N.Y. 2007).....9

*Alleyne v. Four Seasons Hotel – New York*, 2001 U.S. Dist. LEXIS 1503
    (S.D.N.Y. Feb. 15, 2001) ...............................................................12

*Batac v. Pavarini*, 2007 U.S. App. LEXIS 2550 (2d. Cir. 2007) ...........................7

*Beauchat v. Mineta*, 2007 U.S. App. LEXIS 29408 (2d Cir. 2007) .......................6

*Bennett v. Verizon Wireless*, 2008 U.S. Dist. LEXIS 5373
    (W.D.N.Y. Jan. 24, 2008) ...............................................................13

*Beyer v. County of Nassau*, 524 F.3d 160 (2d Cir. 2008).......................................4

*Bucknell v. Refined Sugars, Inc.*, 82 F.Supp.2d 151 (S.D.N.Y. 2000) ..................20

*Campbell v. Alliance,* 107 F. Supp. 2d 234 (S.D.N.Y. 2000)..................................9

*Chojar v. Levitt*, 773 F.Supp. 645 (S.D.N.Y. 1991) ..............................................14

*Conner v. Schnuck Mkts., Inc.,* 121 F.3d 1390 (10th Cir. 1997) ...........................13

*Cooper v. Morgenthau*, 2001 U.S. Dist. LEXIS 10904
(S.D.N.Y. July 31, 2001) ...............................................................8

*Dawkins v. Witco*, 103 F.Supp. 2d 688 (S.D.N.Y. 2000) ......................................27

*Feingold v. State of New York*, 366 F.3d 138 (2d Cir. 2004)..................................13

*Georgy v. O'Neill*, 2002 U.S. Dist. LEXIS 4285
(S.D.N.Y. Mar. 22, 2002) ..........................................................19, 22

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14 (2d Cir. 1995) ....21

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181 (2d Cir. 2006) ..........................6

*Griffin v. Ambika Corp.*, 103 F.Supp.2d 297 (S.D.N.Y. 2000) ................. 18, 20-22

*Hill v. Rayboy*, 467 F. Supp. 2d 336 (S.D.N.Y 2006)..............................................2

*Joyner v. Greiner*, 195 F.Supp.2d 500 (S.D.N.Y. 2002) ......................................11

*Jute v. Hamilton Sundstrand Corp.*, 402 F.3d 166 (2d Cir. 2005).............. 4, 13-14

*Khan v. Abercrombie & Fitch, Inc.*, 35 F.Supp.2d 272 (E.D.N.Y. 1999) .............20

*Kravitz v. N.Y. City Transit Auth.*, 2001 U.S. Dist. LEXIS 21618
(E.D.NY. 2001)..................................................................................2

*Lawrence v. Thomson Learning, Inc.*, 2007 U.S. Dist. LEXIS 39988
(N.D.N.Y. June 1, 2007)................................................5, 10, 11, 15, 20, 22, 24

*Margo v. Weiss*, 213 F.3d 55 (2d Cir. 2000)......................................................7, 11

*Modern Home Institute, Inc., v. Hartford Accident & Indemnity
Co.*, 513 F.2d 102 (2d Cir. 1975)....................................................12, 15, 17, 26

*Morpurgo v. United States*, 437 F.Supp. 1135 (S.D.N.Y. 1977).........12, 16, 17, 26

*Murray v. Visiting Nurse Service of New York*, 528 F.Supp.2d 257
(S.D.N.Y. 2007)................................................................................13

*Ofudu v. Barr Labs., Inc.*, 98 F.Supp.2d 510, 512 (S.D.N.Y. 2000) ....................11

*Pinkney v. EMI Music*, 2006 U.S. Dist. LEXIS 59980
(S.D.N.Y.  Aug. 22, 2006) ................................................................8

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).......................................6-7, 9

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)...... 13-14, 19

*Ralkin v. NYCTA*, 62 F. Supp. 2d 989 (E.D.N.Y. 1999)..........................................9

*Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170 (2d Cir. 1996) ........................13

*Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000).................................................8

*Sheppard v. Beerman*, 317 F.3d 351 (2d Cir. 2003)...........................12, 15, 17, 26

*Silva v. Peninsula Hotel*, 509 F.Supp.2d 364 (S.D.N.Y. 2007)....................... 18-21

*Simpson v. New York State Dep't of Civil Services*, 166 Fed. Appx. 500
    (2d Cir. 1996)..................................................................................................13

*Sista v. CDC*, 445 F.3d 161, 174 (2d Cir. 2006)....................................................6

*Sklaver v. Casso-Solar Corp.*, 2004 U.S. Dist. LEXIS 24934
    (S.D.N.Y. May 13, 2004)..................................................................................7

*Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309
    (6th Cir. 2001)................................................................................................13

*Smith v. Revival Home Health Care, Inc.*, 2000 U.S. Dist. LEXIS 4105
    (E.D.N.Y. Mar. 28, 2000) ...........................................................................5, 14

*Stone v. Manhattan & Bronx Surface Transit*, 539 F.Supp.2d 669
    (E.D.N.Y. 2008)................................................................................................9

*Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992) ...............................7

*Vosatka v. Columbia University*, 2005 U.S. Dist. LEXIS 18139
    (S.D.N.Y. Aug. 25, 2005) ...............................................................................13

*Weinstock v. Columbia University,* 224 F3d 33 (2d Cir. 2000)..............................24

*Williams v. R.H. Donnelly Corp.*, 368 F.3d 123 (2d Cir. 2004) ..............................4

In her Memorandum of Law (cited herein as "Opposition") opposing defendants' motion for summary judgment, plaintiff fails to raise a genuine dispute of material fact regarding defendants' reasons for assigning another social worker to travel for three days with the Hospital's palliative care program, or regarding defendants' reasons for terminating Newmark's employment at the end of her probationary period. For the reasons stated herein, and in defendants' Memorandum of Law Supporting their Motion for Summary Judgment ("Memorandum"), the complaint should be dismissed.

It will be noted that in plaintiff's Counterstatement of Facts pursuant to Local Civil Rule 56.1 ("Counterstatement"), plaintiff responds to many paragraphs of defendants' Statement of Undisputed Facts pursuant to Local Civil Rule 56.1 ("56.1 Statement" or "56.1 St.") with the statement "Denies materiality" without a citation to record evidence, and these paragraphs are therefore deemed admitted.[1] Further, although the vast majority of plaintiff's denials are not corroborated by the record, and in many cases plaintiff simply ignores or recants her own prior testimony, rejects the plain meaning of testimony and record evidence, and often offers only unresponsive commentary, very few of these supposed discrepancies are arguably material to her claims of discrimination and retaliation. The more significant alleged discrepancies will be addressed as appropriate below. Defendants note that 56.1 St. ¶ 41 is further supported by Magone 150-51[2]; 56.1 St. ¶ 176 is supported by Orsaia 155-56; and 56.1 St. ¶¶ 223-24 are supported by Newmark 128-28, citations inadvertently omitted from the 56.1 Statement.

In the end, notwithstanding plaintiff's various claims about what words Magone may have uttered at various times, she offers no evidence that the decision to select Serra to

---

[1]  Plaintiff's response to the 56.1 Statement is preceded by a "Counterstatement of Material Facts" for which no provision appears in the local rules.

[2]  Citations to pages from the transcript of a witness's deposition testimony are, as in Defendant's Memorandum of Law in Support of Their Motion for Summary Judgment, indicated by the name of the witness followed by the pertinent page numbers. Plaintiff appears to have attached complete transcripts to her motion papers.

participate in a business trip with the palliative care program was an adverse employment action, that the selection was made for discriminatory reasons, or that defendants would have reached a different decision if plaintiff were not in a protected category. Likewise, plaintiff has offered no evidence that she was terminated at the end of her probationary period for retaliatory reasons. The complaint should therefore be dismissed upon summary judgment.

I.    **Plaintiff has failed to offer evidence supporting her age Discrimination claim sufficient to defeat summary judgment.**

   A.    Plaintiff has failed to produce evidence that she suffered An adverse employment action as a result of her age.

Plaintiff argues in conclusory fashion that Magone's selection of Serra rather than Newmark to travel with the Hospital's palliative care program to Columbus, Ohio for a three-day site visit constitutes an actionable adverse employment action because it purportedly constituted "training". A denial of training, however, is not actionable unless plaintiff can show resulting material harm. *Hill v. Rayboy*, 467 F. Supp. 2d 336, 352 (S.D.N.Y 2006) ("When an employee cannot show material harm from a denial of training, such as a failure to promote or a loss of career advancement opportunities, there is no adverse employment action"). See also *Kravitz v. N.Y. City Transit Auth.*, 2001 U.S. Dist. LEXIS 21618, at *6-7 (E.D.NY. 2001) (finding that plaintiff failed to raise a factual issue genuinely in dispute because plaintiff "present[ed] no evidence, beyond his conclusory allegations, that he was harmed by not receiving training in these programs").

Here, plaintiff fails to allege any negative impact on her employment that resulted from the denial of training, aside from her own subjective disappointment. She does not claim that she expected a change in title, pay, benefits, responsibilities, or position as a result of association with the palliative care program (cf. 56.1 St. ¶ 103), or that appointment to participate in the site

visit would result in a relinquishment of her other social work responsibilities; indeed, Newmark

testified that she understood Serra to have exactly the same job responsibilities as herself

(Newmark 216).[3]  Nor does Newmark claim that this purported denial of training interfered with

her own ability to provide palliative care.  To the contrary, Del Bene testified without

contradiction that she began the Hospital's palliative care program shortly after beginning

employment in May 2006 (56.1 St. ¶ 55), and provided palliative care to patients in collaboration

with Serra in multiple cases before Serra received the training Newmark alleges (56.1 St. ¶ 108).

Newmark claims to have collaborated with Del Bene in similar fashion (cf. plaintiff's response

to 56.1 St. ¶ 66), and apparently maintains that she did so successfully, likewise without the

benefit of such purported training, in the months before the site visit took place (56.1 St. ¶ 101).

Thus plaintiff can point to no evidence suggesting how she would have stood to gain an

actionable benefit as a result of this site visit.  Although no witnesses were asked at deposition to

describe their experience during the site visit, Serra volunteered (Serra 29) that "I had gone to

Ohio with Maura Del Bene, Rose Ann O'Hare, and Susan Shepp . . . to begin looking at how to

formulate the program.  Because the program was not yet formulated.  It was in the process of

being formulated, and we were still looking at other people's programs."  This description,

which is all the record contains on the subject, is insufficient to suggest materially beneficial

training.

At most, Newmark claims that her involvement in palliative care diminished after Serra's

selection to participate in the site visit (Newmark 191; 56.1 St. ¶ 101), but this assertion is of no

moment, because Newmark acknowledges that she had the authority to decide which cases she

---

[3]  Indeed, in this context, it is difficult to grasp what plaintiff hopes to accomplish by arguing (p. 17) that Magone initially denied ever speaking to Newmark on the subject. This is patently false, as Magone's transcript shows at Magone 82-84. In fact, Magone and plaintiff's counsel merely disputed how to characterize the decision, not whether the decision was communicated to Newmark. Further, Magone's testimony is undisputed that regardless of which social worker went on the trip, both would remain involved in palliative care (Magone 84).

would handle and which Serra would handle, and reserved the more difficult cases for herself (Newmark 218-19, 232-33). Nor is there any suggestion, let alone evidence, that plaintiff's participation in this site visit would have somehow averted her termination.

As a result, plaintiff's reliance on *Jute v. Hamilton Sundstrand Corp.*, 402 F.3d 166, 176-77 (2d Cir. 2005) in support of her claim that "training opportunity qualifies as adverse action" is misplaced. The only reference to training opportunities in *Jute* refers to the fact that the plaintiff and employees less senior would be required to attend a nighttime training program to be eligible for a promotion. Although plaintiff declined the opportunity for personal reasons, the company later gave her daytime training. Although the court in *Jute* mentioned plaintiff's selection as alleged evidence of retaliatory motive, without so finding, *Jute* contains no holding that a denial of training, *per se*, constitutes an adverse employment action. Jute does instruct, however, that "the refusal to authorize travel does not rise to the level of being 'adverse.'" *Jute* at 178 n.8.

Plaintiff's reliance on *Beyer v. County of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) is similarly misguided. To the extent cited here, *Beyer* discusses only transfers, and when plaintiff's position and department were outsourced by the employer, her denial of a transfer to another position involving similar duties constituted an adverse employment action because the transfer was necessary for her continued employment. Further, although the court in *Beyer* concluded that denying a transfer could constitute an adverse employment action, plaintiff was still "require[d] to . . . proffer objective indicia of material disadvantage; 'subjective, personal disappointment' is not enough" (citing *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)). Accordingly, even if the palliative care program's site visit to Ohio could be considered a transfer (which it cannot be), plaintiff has failed to provided material objective indicia showing that she was significantly disadvantaged, any more than she has in terms of

4

training. Cf. *Smith v. Revival Home Health Care, Inc.*, 2000 U.S. Dist. LEXIS 4105, at *9-10 (E.D.N.Y. Mar. 28, 2000).

    Plaintiff tries to create a material issue of fact with regard to whether the selection of a social worker to attend the site visit in Ohio, or indeed Serra's "appointment" to the palliative care program (whatever she claims that may mean), was an adverse employment action by seizing on a phrase in Serra's January 17, 2007 performance evaluation, after Newmark's termination, concluding Serra's own probationary period after a three-month extension (Ex. 12 to plaintiff's papers). Plaintiff highlights the evaluation's reference to Serra as "the social worker dedicated to the palliative care services," and argues from this that Serra's position and responsibilities must have been fundamentally different from Newmark's. Such tortured parsing amounts to precisely the same "gargantuan leap in logic" rejected by the court in *Lawrence v. Thomson Learning*, where the plaintiff tried to derive a genuine dispute of material fact from discrepancies between the notes taken during two applicants' interviews for promotion. Indeed, plaintiff's conjecture is at odds with the record evidence. It is undisputed that palliative care was only one among many responsibilities and projects Serra had (cf. Newmark 216, Serra 29-30), just as palliative care (56.1 St. ¶ 101) and the Disaster Mental Health project (56.1 St. ¶¶ 79-84, 131) had been two of Newmark's, and that after Newmark's termination from employment Serra was stretched too thin by her other responsibilities to give palliative care what she considered to be proper attention (Serra 29-30; Del Bene 10-12)[4]. The fact that Magone commended Serra on such work as she had done with palliative care did not make palliative care Serra's sole responsibility, any more than Magone's belief that Newmark was neglecting her responsibilities with regard to Disaster Mental Health meant that was Newmark's sole task and responsibility.

---

[4] Indeed, although the Hospital eventually created a dedicated palliative care social work position one year after Newmark's departure, the position is part-time and Serra does not occupy it (Serra 30).

Accordingly, Serra's performance evaluation in January 2007 does not provide evidence that Newmark suffered an adverse employment action in August 2006, and Newmark has failed to state a prima facie case of age discrimination.

B.    Plaintiff has failed to create an inference of age discrimination.

Plaintiff also apparently argues that she is entitled to bypass the traditional *McDonnell-Douglas* analysis because she alleges what she claims to be "direct evidence" of age discrimination. Nothing in *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 187 (2d Cir. 2006), which she cites for this proposition, supports plaintiff's claim that she need not offer evidence persuading a trier of fact of discriminatory animus. Indeed, *Graves*'s claim of age discrimination was dismissed on summary judgment.

Even assuming plaintiff to argue, as she does not, that the Court should apply the "mixed-motive" analysis set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 246-47 (1989), plaintiff still cannot defeat summary judgment because she cannot rebut defendants' explanation of how they reached their decision, and cannot dispute that defendants would have reached the same decision without respect to her age. To defeat summary judgment under such an analysis, plaintiff must not merely offer evidence supporting an inference of discrimination, but "initially proffer evidence that an impermissible criterion was *in fact* a motivating or substantial factor in the employment decision." *Beauchat v. Mineta*, 2007 U.S. App. LEXIS 29408, at **5 (2d Cir. 2007) (emphasis supplied); *see also Sista v. CDC*, 445 F.3d 161, 174 (2d Cir. 2006). Plaintiff cannot do so here, as she offers no evidence to rebut the undisputed testimony of Magone, O'Hare, and Del Bene that they conferred over the selection of a social worker for the palliative care site visit (56.1 St. ¶104), that Magone and Del Bene cited performance-based reasons for selecting Serra rather than Newmark (56.1 St. ¶¶ 105-09), and that no one cited age-based

6

reasons for the decision (56.1 St. ¶ 120; Del Bene 26-32; Magone 72, 85-86; Magone Aff. ¶ 2). Such undisputed evidence of an age-neutral decision-making process, coupled with the fact that it was Magone who hired plaintiff in the first place, precludes Newmark from showing that defendants were motivated by Newmark's age in choosing Serra for the palliative care program.

Plaintiff attacks this argument by ignoring all evidence of defendants' decision-making process and asserting (without supporting citation) that the same-actor inference is inapplicable to her age discrimination claim, and further argues that the inference is weakened with the passage of time after hiring. The court should not, however, credit such specious arguments. Plaintiff asserts, for example, that the same-actor inference is inapplicable in cases where, as here, she purports to offer direct evidence of discrimination.[5] Such an assertion has no basis in law because plaintiff is required, whether under a pretext analysis or a mixed-motive analysis, to show that her age was a "substantial or motivating factor" in Magone's decision. *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1185 (2d Cir. 1992) ("the direct method of proof contemplated by the last step of *Burdine* is the same as the plaintiff's initial burden under *Price Waterhouse*.")

Plaintiff relies solely on *Sklaver v. Casso-Solar Corp.*, 2004 U.S. Dist. LEXIS 24934, 2004 WL 1381264 (S.D.N.Y. May 13, 2004) for her argument that the same-actor inference is inapplicable because of the passage of time between her hire on or before March 20, 2006 and Magone's August 15, 2006 decision. In *Sklaver*, the court found the same-actor inference

---

[5] In a departure from her deposition testimony, plaintiff now claims two instances of direct evidence: Magone's alleged comment on August 15 when she communicated her decision, and, for the first time, Magone's alleged restatement of her August 15 comment during her meeting with Newmark and Orsaia on September 28. On page 233 of her deposition transcript, however, Newmark responded in the negative to the question, "Aside from what you testified to about Cathy Magone's comments in that meeting in August, did anyone say anything to you that made you believe you were being treated differently because of your age?" Plaintiff cannot defeat summary judgment by recanting her own deposition testimony. *Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir. 2000); *Batac v. Pavarini*, 2007 U.S. App. LEXIS 2550, *50 (2d. Cir. 2007).

unpersuasive where the company president had hired plaintiff at age 56 and fired him at age 60;

Newmark, however, was hired by Magone at age 62 and remained 62 when Magone decided five

months later to send Serra to Ohio with the palliative care team.   Despite plaintiff's

mischaracterization, the law is clear that the same-actor inference is strong when the same

individual hired and fired the plaintiff within a two-year period. *Pinkney v. EMI Music*, 2006

U.S. Dist. LEXIS 59980, *33-4 (S.D.N.Y.  Aug. 22, 2006); *Cooper v. Morgenthau*, 2001 U.S.

Dist. LEXIS 10904, *17 (S.D.N.Y. July 31, 2001). See also *Schnabel v. Abramson*, 232 F.3d 83,

91 (2d Cir. 2000).  Indeed, the inference is strengthened where, as here, Magone and Newmark

belong to the same protected category (56.1 St. ¶ 198). *Cooper*, 2001 U.S. Dist. LEXIS 10904,

at *19.  Plaintiff's argument (Opposition, pp. 20-21) that she was somehow entitled to be

involved in Magone's decision, and repeated conclusory argument that Magone was merely

trying to "cover her ass" by explaining her decision to Newmark in her e-mail of October 4, are

neither evidence nor argument supporting an inference of discrimination.

        Beyond the foregoing, plaintiff relies solely on misstatements of the record to support her

argument that the same-actor inference should not apply.  The record nowhere indicates that

"Magone only hired Newmark based on Galloway's strong recommendation of Plaintiff"

(Opposition, p. 24).  To the contrary, it is undisputed that Magone interviewed plaintiff herself

(56.1 St. ¶¶ 2, 4, 6), that Magone was aware of Newmark's age before she hired her (56.1 St. ¶¶

136, 198), and that it was Magone who made the decision to hire plaintiff (56.1 St. ¶ 2).

Plaintiff's other misrepresentations of the record in her opposing papers, such as claiming for the

first time that Magone "promised" her the palliative care role (Opposition, p. 4) and "assured"

her that she would not have trouble adjusting to the Hospital's case management model

(Opposition, p. 5), if they could be honored, undercut plaintiff's claim further, because they

reflect a lack of hostility on Magone's part at the outset of the employment relationship.[6]  In any

event, the same-actor inference continues to apply even if not all of the individuals in the group

who hired and fired the plaintiff are identical, so long as at least one of the individuals remains

the same. *Campbell v. Alliance,* 107 F. Supp. 2d 234, 250 (S.D.N.Y. 2000)*; Ralkin v. NYCTA,*

62 F. Supp. 2d 989, 1000 (E.D.N.Y. 1999).

Nor does plaintiff acknowledge, much less rebut, the glaring factual shortcomings

outlined in defendants' Memorandum of Law (pp. 21-22) that she would need to overcome to

establish either a prima facie case of discrimination (under the *McDonnell-Douglas* analysis) or

that age discrimination was a substantial or motivating factor in defendants' decision (under the

*Price Waterhouse* analysis).  Thus her claim of age discrimination cannot survive summary

judgment.

C.      Plaintiff has failed to produce evidence disputing
        Defendants' stated reasons for choosing Serra to attend the site visit.

Even if plaintiff could establish a prima facie case of discrimination, under the

*McDonnell-Douglas* analysis, or (again, an argument she chooses not to advance) that her age

was a substantial or motivating factor in an adverse employment action, under the *Price*

*Waterhouse* analysis, she cannot defeat defendants' motion for summary judgment because she

offers no evidence rebutting defendants' evidence that they would have taken (in fact, *did* take)

the same action regardless of plaintiff's age. See *Stone v. Manhattan & Bronx Surface Transit,*

539 F.Supp.2d 669, 679-80 (E.D.N.Y. 2008); *Ahmed v. Heartland Brewery*, 2007 U.S. Dist.

LEXIS 53632, *12-14 (S.D.N.Y. 2007).  Newmark failed to make progress on the Disaster

---

[6]   Likewise, plaintiff's conclusory assertion (p. 17) that palliative care was "one of the specific terms of employment" is of no moment, given that Del Bene, who would start the program, was not hired and did not begin work until several months later (56.1 St. ¶ 55).  Indeed, plaintiff does not claim that she and Magone discussed any details of the program during her interview, or that Magone had any authority over its operation.

Mental Health project Magone had previously assigned, which made Magone hesitate to assign another project to her (56.1 St. ¶ 105). Del Bene expressed concern about Newmark's lack of follow-through on opportunities to work in palliative care, as well as concern about the impact of Newmark's perceived demeanor on patient care and on the credibility of the palliative care program (56.1 St. ¶¶ 106-07). By contrast, Del Bene was impressed with Serra's enthusiasm and curiosity, and had developed a very positive working relationship with Serra (56.1 St. ¶¶ 108-12). Although plaintiff may express disagreement and disappointment with the conclusions defendants reached, or differ in her opinions, she cannot dispute that defendants in fact held these discussions and reached these conclusions. Because plaintiff cannot defeat summary judgment merely by criticizing defendants' good faith business decisions, *Lawrence v. Thomson Learning, supra*, her claim of age discrimination should be dismissed upon summary judgment.

**II.    Plaintiff has failed to offer evidence that the defendants' legitimate, non-retaliatory reasons for her termination were false and a pretext for retaliation.**

Plaintiff's claim of retaliation must be dismissed because she offers no admissible evidence, or cogent legal argument, that defendants' legitimate, non-retaliatory reasons for her termination were pretextual. Her claim of direct evidence of retaliation depends on her mischaracterization of a document; her claim that temporal proximity is enough to suggest pretext is false as a matter of law; and all plaintiff's sundry factual arguments, although they may underscore differences in opinion over the quality of her work and the fairness with which she was treated, do nothing to create a genuine dispute of what is a central material fact in any retaliation claim: whether defendants believed the reasons on which they state that they based plaintiff's termination from employment.

A.    <u>Plaintiff's claim of direct evidence of retaliation is unfounded.</u>

Plaintiff claims (Opposition, pp. 22-23) to have uncovered "direct evidence" of Magone's retaliatory animus in the form of her October 5, 2006 memorandum, from which plaintiff excerpts the single line, "Carole's reaction to a business decision to assign another team member to our palliative program was unacceptable." Plaintiff then argues that "[p]recisely what Magone meant by that is a question of fact that is best left for a jury to determine." This argument ignores the rest of the document, whose first line reads, "Carole Newmark Points discussed at Termination Meeting on 10/05/06." Thus the document is not a planning document outlining Magone's intentions, as plaintiff claims, but a post-meeting summary of the reasons Newmark was given at her meeting (56.1 St. Ex. 41). Plaintiff has never claimed that retaliatory reasons were expressed to her during her termination. To the contrary, she admits both in her deposition and in her Counterstatement of Facts that Magone said nothing to suggest her termination was retaliatory (56.1 St. ¶246). Recanting those admissions in her Opposition is insufficient to defeat summary judgment. *Margo*, 213 F.3d at 60. It is also well-established that plaintiff may not defeat summary judgment by misrepresenting the documents upon which she relies. *Joyner v. Greiner*, 195 F.Supp.2d 500, 507 n.4 (S.D.N.Y. 2002) ("Obviously, [plaintiff] cannot keep his complaint alive by the expedient of misquoting the letters"); *Ofudu v. Barr Labs., Inc.*, 98 F.Supp.2d 510, 512 (S.D.N.Y. 2000) ("Plaintiff cannot raise a genuine issue of fact by asserting that the contents of a document are other than what they are"); *see also Lawrence v. Thomson Learning, supra*, at *60 ("From this title discrepancy [between two sets of interview notes], Lawrence deduces that she was subjected to a more grueling set of questions [than a fellow applicant] . . . This gargantuan leap in logic hardly carries Plaintiff's burden of showing pretext.")

11

*Cf. Alleyne v. Four Seasons Hotel – New York*, 2001 U.S. Dist. LEXIS 1503, at *35 n.4

(S.D.N.Y. Feb. 15, 2001) (plaintiff cannot create issue of fact by misreading document).

If the plain language of the document were not enough, Magone testified that the

memorandum, prepared at Orsaia's request, was intended to "recap" the reasons presented to

Newmark (Magone 160-61). The quoted sentence refers, not to Newmark's complaint to Human

Resources, but to information Magone had received from Del Bene that Newmark's anger at

being denied the palliative care assignment was interfering with her job performance (Magone

161-63; cf. Magone 133). It is well-established that plaintiff cannot defeat a motion for

summary judgment merely by claiming, without evidence, that Magone must be lying and that

her credibility should be challenged before a jury. *Sheppard, supra,* at 356; *Modern Home*

*Institute, supra,* at 110; *Morpurgo, supra,* at 1137. Accordingly, plaintiff's claim to have

furnished direct evidence of retaliation is unsupported by the record.

B.    Plaintiff cannot demonstrate pretext through proximity in time.

Plaintiff makes much of the fact that her termination occurred a week after her September

28, 2006 meeting with Magone and Orsaia to discuss her complaint, and her e-mail of the

following day (Opposition at 21-22). But plaintiff does not allege that she made any new

allegations here (56.1 St. ¶ 193), and instead it is clear from all accounts that each simply tried to

persuade the other to her own pre-existing point of view without success (56.1 St. ¶¶ 189-90,

193). If Magone knew of plaintiff's complaint on or about August 21, as plaintiff insists

elsewhere in her papers (Opposition p. 1), then her argument about proximity in time should be

based on the six-week lag between her original complaint and her termination, rather than dating

from the September 28 meeting. Indeed, the fact that Magone did not terminate Newmark

immediately after learning of her complaint undercuts Newmark's claims regarding the supposed ferocity of Magone's temper and retaliatory animus (56.1 St. ¶¶49-51, 54, 234, 236-40).

Plaintiff offers no valid support for her claim (Opposition at p. 22 and again at pp. 29-30) that proximity in time is sufficient to demonstrate pretext. Two of plaintiff's cases, *Feingold v. State of New York*, 366 F.3d 138, 156 (2d Cir. 2004), and *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996), merely rely on proximity in time to satisfy plaintiff's burden of establishing a prima facie case of retaliation, not to rebut the defendants' legitimate, non-retaliatory rationale, and therefore do not support plaintiff's argument. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) and *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005), also cited by plaintiff, fail to present the prevailing rule in this circuit that mere temporal proximity is insufficient to support a claim of retaliation where the defendant proffers a legitimate reason for plaintiff's discharge. *Bennett v. Verizon Wireless*, 2008 U.S. Dist. LEXIS 5373 (W.D.N.Y. Jan. 24, 2008) (temporal proximity alone insufficient to establish pretext), citing *Simpson v. New York State Dep't of Civil Services*, 166 Fed. Appx. 500 (2d Cir. 1996) (non-precedential); *Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309, 317 (6th Cir. 2001) ("temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual"); *Conner v. Schnuck Mkts., Inc.,* 121 F.3d 1390, 1397-98 (10th Cir. 1997) (disagreeing with the plaintiff's argument that temporal proximity between protected activity and adverse employment action is always sufficient to survive summary judgment). See also *Murray v. Visiting Nurse Service of New York*, 528 F.Supp.2d 257, 277 n.14 (S.D.N.Y. 2007); *Vosatka v. Columbia University*, 2005 U.S. Dist. LEXIS 18139, at *36-7 (S.D.N.Y. Aug. 25, 2005); *Revival Home*

*Health Care, Inc.*, 2000 U.S. Dist. LEXIS 4105, at \*20; *Chojar v. Levitt*, 773 F.Supp. 645, 654-5 (S.D.N.Y. 1991).

Moreover, *Jute* and *Quinn* are distinguishable on their facts, relying as they do not only on temporal proximity, but on additional suspicious factors. In *Quinn*, the supervisors did not begin documenting complaints from clients and coworkers until after plaintiff's initial inquiry to the State Division of Human Rights regarding her concerns of sexual harassment. *Quinn, supra*, at 770. *Quinn*'s plaintiff, as well, was a ten-year employee whose prior evaluations (apparently by one supervisor she accused of harassment) all directly contradicted the post-complaint allegations raised about her performance, and one of the other supervisors she accused of sexual harassment investigated her complaint. Unlike the plaintiff in *Quinn*, Newmark was a six-month probationary employee with no history of positive performance reviews *by Magone*[7] (whatever the quality of Newmark's performance a decade earlier, under a different supervisor and a different model of social work, and before her hiatus from an inpatient hospital environment, may have been), and Magone's subsequent employment actions were overseen by Orsaia, against whom plaintiff has leveled no allegations of age discrimination. Further, Magone prepared two notes to file reflecting concern about Newmark's performance approximately four weeks before any complaint was made (56.1 St. Ex. 22, 23).

Likewise, *Jute* (which cites only *Quinn* for this proposition) is distinguishable because its plaintiff, a fourteen-year employee with positive performance reviews, relied not only on close proximity in time between her protected activity and receiving a negative employment reference,

---

[7]  Magone's May 11, 2006 e-mail to Newmark (56.1 St. Ex. 12) reads in part, "I just wanted you to know that I really think you're going to be amazing.  You are just going to have to be patient with yourself and accept that there are some things you just don't know. . .  Six months from now, we will be laughing – I promise."  This is not, as plaintiff apparently argues, evidence that Magone thought Newmark's performance was already amazing.  To the contrary, the text of the e-mail and Magone's testimony (Magone 150-51) make clear that Magone was offering encouragement in the face of Newmark's frustration and imperfect performance.

14

but on a tight chain of apparently arbitrary and allegedly retaliatory acts (on which she waited too long to file) that began the day after she was mentioned as a favorable witness in another plaintiff's deposition and continued over two years until her termination, including several individualized denials of opportunities for promotion or additional income. Newmark, by contrast, offers no evidence whatsoever that she was singled out for special treatment, except to allege that Magone, whom Newmark already distrusted and disliked for her supposedly dismissive, demanding, and demeaning management style before her complaint (56.1 St. ¶¶ 48-51), became more dismissive (56.1 St. ¶¶ 234-38).

In any event, the logical fallacy of "post hoc, ergo propter hoc" ("after it, therefore because it") has never been tolerated in this circuit, *Lawrence v. Thomson Learning, Inc.*, 2007 U.S. Dist. LEXIS 39988, at *113 (N.D.N.Y. June 1, 2007), and indeed, reliance on temporal proximity alone amounts to nothing more than the unsupported claim that defendants must be lying when they offer their contrary explanation. But for plaintiff to be entitled to proceed to trial, the jury must be presented with evidence – beyond demeanor – upon which to find facts and base its assessment, and plaintiff has cited nothing upon which to do so. It is well-established that if the most plaintiff can hope for at trial is cross-examination and an assessment of credibility, then summary judgment is appropriate. *Sheppard v. Beerman*, 317 F.3d 351, 356 (2d Cir. 2003) ("Sheppard essentially suggests that Judge Beerman is lying about his motive for firing Sheppard. A plaintiff, however, cannot defeat summary judgment on a retaliation claim merely by impugning a defendant's honesty" (internal punctuation and citation omitted); *Modern Home Institute, Inc., v. Hartford Accident & Indemnity Co.*, 513 F.2d 102, 110 (2d Cir. 1975) ("If the most that can be hoped for is the discrediting of defendant's denials at trial, no question of material fact is presented"); *Morpurgo v. United States*, 437 F.Supp. 1135, 1137 (S.D.N.Y.

1977) ("That plaintiff challenges the veracity of affidavits and documents submitted by the defendants cannot, in the absence of evidential facts tending to support her claims, serve to defeat a motion for summary judgment.")

    C.    Plaintiff's factual claims do not create a genuine dispute of material fact
<u>regarding defendants' proffered reasons for her termination.</u>

Plaintiff's final point in opposition to summary judgment consists of a series of loosely connected factual arguments which, she suggests, create a genuine issue of fact concerning defendants' stated reasons for her termination. Thus plaintiff argues that: defendants' reasons for her termination are not stated in one among several contemporaneous writing by Magone, though they appear elsewhere (Opposition, p. 24); that these stated reasons, many of which were reduced to writing as informal notes to file, are not to be credited because Magone prepared them herself, and most of them were written after plaintiff complained of discrimination to Orsaia (Opposition, p. 24); plaintiff also denies that many of the incidents complained of to Magone took place, or else claims that Magone was unfair in her reaction to these complaints, and also asserts that the Hospital case managers who were the source of these complaints were "difficult" or "dysfunctional" (Opposition, pp. 25, 26, 28); that plaintiff's allegedly adequate or even purportedly commendable performance at other times disproves Magone's stated reasons (Opposition, pp. 25-26); that Magone's demeanor before and during Newmark's termination somehow suggested retaliatory animus (Opposition, p. 27); that Newmark's absences were insufficient to warrant discipline (Opposition, pp. 28-29); that the Disaster Mental Health Project was a pretextual basis for discipline because Magone was not acquainted with its details (Opposition, p. 29 n.3); and that events on the day of termination somehow imply pretext (Opposition, pp. 27-28).

Plaintiff's arguments fail, not only on their own terms, but also for the more general reason that her differences of opinion with her former manager over the quality of her work, or the quality of Magone's management, are irrelevant to the basic question of whether the decision to terminate plaintiff's employment during her probationary period was motivated by retaliatory animus. Thus, although plaintiff devotes much of her brief to factual arguments supporting her own private opinions, she devotes no discussion whatsoever to what *Magone* reasonably should have known, and instead simply asks the court to conclude that because plaintiff finds her own account of her performance credible, a jury could find Magone's to be insincere. As previously noted, however, plaintiff cannot defeat a motion for summary judgment merely by claiming, without evidence, that Magone must be lying and that her credibility should be challenged before a jury. *Sheppard, supra, at 356; Modern Home Institute, supra, at 110; Morpurgo, supra, at 1137.* She must, instead, offer some probative evidence of Magone's intentions suggesting retaliatory animus; but that is precisely where plaintiff's argument falls short. Against this background, plaintiff's individual factual contentions are addressed seriatim.

1. *Defendants are not required to document their performance concerns to avoid a later finding of pretext.* Plaintiff challenges defendants' legitimate, non-discriminatory reasons for her termination by arguing that "Magone failed to identify that [i.e., employees' complaints] as a reason for Plaintiff's termination in her October 5, 2006 termination memorandum". The claim is specious because the cited memorandum (56.1 St. Ex. 41) clearly states, as the first item of business in Newmark's termination meeting, "Reviewed Performance Evaluation", and Newmark's performance evaluation (56.1 St. Ex. 7), in turn, summarizes several of the incidents about which Magone had previously prepared notes to file, including not responding in a timely fashion to requests for assistance, not being proactive in troubleshooting difficult cases, and not

17

being proactive in preparing patients and families for discharge. Thus plaintiff's assertion that the Hospital has somehow offered "inconsistent reasons" for terminating her employment has no basis in the record.[8]

Beyond this factual error, plaintiff's litigation strategy and opposition papers suffer from the larger conceptual flaw of insisting that the employer's basis for its dissatisfaction with Newmark's performance, and Orsaia's response to her complaint, are not to be credited unless they were exhaustively documented and communicated to plaintiff at the time of the occurrence, an expectation that has no basis in fact, law, or the rules of evidence.[9] *See generally* Fed. R. Civ. P. 56 (parties may rely on affidavits in support of summary judgment). Of course, Magone did document many of her performance concerns through a series of contemporaneous and abbreviated notes to file; and the fact that she allegedly brought only some of them to plaintiff's attention has no bearing on the validity or sincerity of Magone's other concerns. *Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 310-11 (S.D.N.Y. 2000) ("the fact that an employee was unaware of her employer's dissatisfaction is irrelevant to a court's inquiry on the issue").

   *2. Defendants' reliance on Magone's documentation does not create a genuine issue of material fact.* Although plaintiff impugns (without evidence) the reliability of Magone's notes to file about her performance, it is well-established that "courts may, and frequently must, rely on performance evaluations prepared by supervisors accused of discrimination". *Silva v. Peninsula Hotel*, 509 F.Supp.2d 364, 386 n.19 (S.D.N.Y. 2007) (Court may rely on plaintiff's employment records "although . . . employment discrimination cases are rife with allegations that employers

---

[8]   Although plaintiff's brief is unclear, she may instead be arguing (p. 14) that the references in her performance evaluation to being perceived by her peers as negative, unapproachable, and difficult to work with are pretextual because of general personality conflicts within the department for which others may or may not have been penalized. Even if that is plaintiff's argument, it fails, among other reasons, because Serra was the only other employee on probation at the time of Newmark's termination, and Magone received no complaints about Serra's performance (56.1 St. ¶ 158). Plaintiff offers no evidence regarding Magone's discipline of others.

[9]   Likewise, plaintiff falsely implies (p. 12) that because Orsaia and Magone did not scramble to rebut Newmark's slanted description of their September 28 meeting, they somehow conceded its accuracy.

and supervisors have evaluated the employee unfairly and/or created a false record to show the employee in the worst light possible and thereby justify their actions"); *Georgy v. O'Neill*, 2002 U.S. Dist. LEXIS 4285, at *21 (S.D.N.Y. Mar. 22, 2002) (in determining whether an employee's job performance is satisfactory, courts may, as they often must, rely on the evaluations prepared by supervisors). Indeed, the plain reason why Magone prepared these notes to file after Newmark's complaint is that the incidents occurred after Newmark's complaint, rather than beforehand; submitting a complaint of discrimination does not immunize an employee against future discipline. *Silva, supra, at 386; see also Georgy, supra, at *21* (complaints recorded contemporaneously with their occurrence). As noted above, *Quinn* offers no useful guidance to the Court on this question, among other reasons because Magone's efforts to document Newmark's performance shortcomings began in July 2006 (56.1 St. Ex. 22), when Lantz left and Magone became Newmark's direct supervisor (Newmark 8, 168; Magone 23, 26-27, 136), and well before Newmark complained to Orsaia about Magone's alleged comment. Accordingly, none of plaintiff's challenges to Magone's documentation creates a genuine dispute of material fact regarding the reasons for her termination.

     3.     *Plaintiff's denial of various performance problems does not create a genuine issue of fact regarding Magone's intentions.* Although plaintiff attempts to create a material issue of fact by citing to personality conflicts in the department, this effort must inevitably fail because she has offered no evidence to link such conflicts, or the complaints Magone received, to retaliatory animus. To the contrary, Magone's reliance on these complaints was objectively reasonable and in good faith. At most, plaintiff denies that some of the incidents complained of by coworkers to Magone ever took place, claims with respect to other incidents that her blame is undeserved (56.1 St. ¶¶159-68, 183, 185), and challenges Magone's performance assessments by

relying on the undisputed facts that work in the Department of Case Management was stressful,

that employees did not easily get along with one another, and that some of her coworkers may

have been abrasive or difficult (Opposition p. 25). As pointed out in defendants' Memorandum

of Law, however, and as unchallenged in plaintiff's opposing papers, none of this is evidence

that the complaints never occurred, that anyone who complained about Newmark was lying

about her, or even had a motive to do so, or that Magone, who testified that she investigated

these complaints at the time, should have had any reason to suspect Newmark's coworkers to be

lying about her. By the same token, although plaintiff denies that she displayed an angry

demeanor in the workplace that interfered with her performance, she cannot deny that Del Bene

claims to have witnessed that angry demeanor, and that Del Bene told Magone about it (56.1 St.

59, 107, 149-52). *Silva v. Peninsula Hotel, supra,* at 386 (plaintiff did not demonstrate that

employer's expectations were objectively unreasonable and made in bad faith; plaintiff's

subjective belief that he was not treated fairly simply not enough to demonstrate pretext);

*Lawrence v. Thomson Learning, Inc., supra* at *95 (whether plaintiff was actually deceitful or

actually violated company policy is not for the court to decide; the mere fact that an employee

disagrees with an employer's assessment of her work cannot, alone, show that the employer's

asserted reasons were pretextual); *Bucknell v. Refined Sugars, Inc.,* 82 F.Supp.2d 151, 157

(S.D.N.Y. 2000) (issue was not the correctness or desirability of the reasons offered, but whether

the employer honestly believes those reasons; plaintiff offered no evidence that defendant did not

do so); *Griffin, supra,* at 309 ("The mere fact that an employee disagrees with her employer's

assessment of her work cannot standing on its own show that her employer's asserted reason for

termination was pretextual"); *Khan v. Abercrombie & Fitch, Inc.,* 35 F.Supp.2d 272, 278

(E.D.N.Y. 1999) (even assuming that coworker did lie to supervisor about plaintiff, resulting in

plaintiff's discipline, plaintiff has not alleged that supervisor knew, or should have known, that the coworker's account was false, and hence had not demonstrated pretext); *Agugliaro v. Brooks Bros., Inc.*, 927 F.Supp. 741, 747 (S.D.N.Y. 1996) (plaintiff, fired after accused of sexual harassment, presented no facts to show that decisionmaker did not actually believe he engaged in sexual misconduct).

To the contrary, Newmark has embraced the untenable position both that she was on good terms with all but one of the case managers by the end of her employment (56.1 St. ¶47), and that these same employees must have fabricated the complaints that Magone recorded without solicitation (56.1 St. ¶¶ 159-68, 183-85). Such baseless speculation is insufficient to demonstrate pretext. *Griffin, supra*, at 311 (for a jury to find in plaintiffs' favor, it would have to conclude that complaining parties were all lying, which would require theorizing or guesswork that do not amount to permissible "inferences" under applicable law); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 19 (2d Cir. 1995) (speculative assertions on matters as to which plaintiff has no knowledge or evidence are insufficient to defeat summary judgment).

With regard to the incidents that plaintiff admits took place, notably that a case manager complained to Magone that Newmark was not responsive to a request for a PRI screening (also mentioned in Newmark's performance evaluation) (56.1 St. ¶¶161-64), and that a patient assigned to Newmark's care left the Hospital without wearing appropriate clothing (56.1 St. ¶¶183-85), plaintiff argues that she was unfairly blamed for these incidents. This bare disagreement, however, is not evidence of retaliation. *Silva, supra*, at 386 ("Plaintiff's fundamental disagreement with the conclusions her supervisors drew from incidents which she admits occurred, and her subjective belief that they should not have reflected badly on her performance because they were someone else's fault, is not evidence that her supervisor's

21

appraisals were a sham, invented to mask discrimination"). See also *Georgy, supra,* at *21; *Griffin, supra,* at 309.

4.    *Plaintiff's claims of adequate or commendable past performance are insufficient to establish pretext.*  Plaintiff variously claims that her own prior employment history at the Hospital, a decade earlier, under a different supervisor, and under a different model of social work, is somehow evidence of pretext, and that further evidence is supplied by Magone's allegedly ignoring Newmark's nomination for a Big Heart award in September 2006.[10]  Neither claim supports an inference of pretext. The Second Circuit requires plaintiff to show satisfactory performance at the time of discharge, and so plaintiff's description of her own prior job performance is irrelevant. *Griffin, supra,* at 310; *Lawrence, supra,* at *100 (evidence of prior good evaluations is insufficient on its own to show that discharge was discriminatory). Further, even if plaintiff had received a Big Heart award nomination in September 2006, there is no evidence, and Newmark alleges none, to suggest a nomination from an unidentified coworker was evidence of Magone's perceptions or expectations. There is no evidence that Magone nominated Newmark for this award, or that the award had anything to do with one or more of the events involving Newmark about which Magone had received complaints. Nor, even if plaintiff did receive such a nomination, would it excuse, explain, discredit, or offset the specific performance complaints that Magone did receive notice of, and were taken into consideration when deciding whether Newmark would pass probation. As for Magone's alleged failure to recognize Newmark's second alleged nomination, even if plaintiff received one, Magone explained at her deposition that while she liked to publish such commendations to her staff when

---

[10]  Despite offering documentary evidence of receiving a first Big Heart award in April 2006, and despite testifying to preserving documents she thought would support her claims on September 29, 2006 (Newmark 159), plaintiff has offered no evidence to support her claim that she received such a nomination in September apart from her own testimony. Magone testified to being unaware of it (56.1 St. ¶ 245), and had no such record in her files.

22

she thought of it, it was not a regular practice (Magone 152) and she was aware of no such

commendation for Newmark (56.1 St. ¶ 245). The fact that Magone failed to mention the award,

if indeed she ever knew of it, at some unspecified point in September 2006, bears no reflection

whatsoever on Magone's intentions or state of mind with respect to Newmark's successful

completion of her probationary period.

      5.     *Magone's alleged change in demeanor does not constitute evidence of pretext.*

Utterly ignoring the points raised in defendants' Memorandum of Law that such allegations fail

to present evidence of pretext, plaintiff repeats her assertion that "Magone became less cordial

and dismissive of Plaintiff than she previously had been"; and that "Magone did not make eye

contact with Plaintiff, did not meet with her privately and ignored Newmark when she asked a

question or raised an issue at staff meeting". As indicated previously (defendants' Memorandum

at 27), such a change in Magone's behavior, even if it were discernible and even if it occurred, is

just as easily explained by reference to the numerous complaints about Newmark's performance

that Magone received from all sides, and therefore is not at all probative of pretext. Further, also

as argued previously, plaintiff has so demonized Magone's behavior prior to August 15, 2006

that she is unable to explain, by more than conclusory allegations, how Magone's supposed

behavior could have worsened in order to amount to non-verbal evidence of retaliatory animus.

Plaintiff neither acknowledges nor rebuts defendants' points on this topic.

      6.     *Plaintiff's attendance records do not constitute evidence of pretext.* As can best

be discerned from Newmark's papers, she appears to argue (Opposition, pp. 28-29) that

Magone's concerns about her attendance were pretextual by misinterpreting both the Hospital's

attendance policy and its probationary policy, and by misrepresenting Magone's explanation on

this subject during her deposition. Such tactics, here as elsewhere, are wholly inadequate to

create a showing of pretext, or to create a triable issue of material fact.[11] Magone testified during her deposition that, as per policy and practice, she did not question Newmark's claim of illness as the basis for her unscheduled time off, or require a doctor's note (Magone 111-12). Newmark's speculative and unsupported claim that her illness was somehow exacerbated by Magone's alleged mistreatment is entirely unsupported by any testimony or record evidence, and her further claim (Opposition, p. 29) that it would have been "unconscionable" for her to work while sick offers no reason why Newmark should claim exemption from a Hospital-wide attendance policy also applicable to doctors, nurses, and other health-care providers. Plaintiff cannot defeat summary judgment by questioning the wisdom of the employer's neutral business policies. *Lawrence v. Thomson Learning, supra,* at \*70 (plaintiff's claim that there was no specific policy forbidding her conduct was not enough to defeat summary judgment). Cf. *Weinstock v. Columbia University,* 224 F.3d 33, 43 (2d Cir. 2000).

Further, Magone's point in mentioning Newmark's attendance was clearly not that Newmark had violated the Hospital's attendance policy, but that, even disregarding Newmark's *scheduled* time off for vacation or medical appointments, her frequent episodes of *unscheduled* time off had nearly exhausted her *annual* allotment in only six months, and Magone considered this grounds for concern.   As Magone explained, without challenge, in her affidavit, and as is plain from a comparison of the policies, although the Hospital's Corrective Action Policy (56.1 St. Ex. 11, N-429 to N-433) clearly anticipates progressive discipline rather than immediate termination for most infractions, including attendance (N-429), termination of employment may be recommended at any time during an employee's probationary period (N-424, paragraph 1.3)

---

[11]  Plaintiff attempts to claim a dispute (Opposition, p. 28) regarding whether Newmark had three or four unplanned absences during her probationary period.  In fact, the parties are in agreement that, notwithstanding an erroneous attendance record, Newmark was absent from work for two days early in her employment due to a false diagnosis for a contagious illness (Newmark 127-28; 56.1 St. ¶¶ 223-24).

without regard to progressive discipline. Just as employees are most motivated to display their good performance at the outset of their employment (cf. Newmark 128: "And I told her it was imperative that I not be off because this was a new position and I just felt an obligation to be there. I couldn't take time off"), it is perfectly appropriate for managers to extrapolate from that performance in forming their expectations about the individual's future prospects as a continuing and non-probationary employee, and there is nothing inherently discriminatory or retaliatory in doing so. As for Newmark's spurious claim that Magone somehow violated the terms of the probationary policy, Orsaia testifed, and Magone affirmed in her affidavit (56.1 St. ¶ 26), that Magone as head of her department was required only to consult with Human Resources before extending Newmark's probation, not to submit a written memorandum as an intermediate supervisor as Newmark's initial supervisor, Assistant Director of Case Management Diane Lantz, would have done (Magone 23, 26-27; Newmark 8, 168). See 56.1 St. Ex. 11, N-425 (contrasting "Department Head Responsibilities" with "Supervisor Responsibilities").

7.    *Magone's lack of familiarity with the Disaster Mental Health Project is not evidence of pretext.* Plaintiff also argues (Opposition, p. 29 n.3) that Magone's concerns regarding Newmark's lack of progress on the Disaster Mental Health training assignment were pretextual because "Magone clearly did not perceive the Mental Health training important [sic]". Plaintiff's inference is specious, as it is undisputed that the Newmark's assignment had been mandated by the New York State Department of Health (56.1 St. ¶ 79), and that Magone was advised that the Disaster Mental Health training needed to be carried out by Hospital Vice-President James Keogh (Magone 74). Further, plaintiff's argument that Magone somehow considered her assignment to Newmark to be unimportant is based solely on Magone's lack of familiarity with the details of the program or its execution, when Magone testified that it was

25

Newmark and another, part-time employee, not Magone herself, who attended the requisite training and received the pertinent information (Magone 72-81). In any event, the text of the e-mail (attached to plaintiff's papers as Ex. 19), referred to in Magone's Memorandum of October 5 and in fact forwarded to Magone that day, sufficiently addresses the question of Magone's perception of importance and significance of the assignment during Newmark's employment. Plaintiff's argument that Magone did not subjectively consider the assignment important on October 5, 2006, based on her deposition performance on February 20, 2008, is again nothing more than a bare attack on the credibility of a defendant witness insufficient to defeat summary judgment. *Sheppard, supra,* at 356; *Modern Home Institute, supra,* at 110; *Morpurgo, supra,* at 1137.

8.     *The events on plaintiff's termination date do not constitute evidence of pretext.*
Plaintiff's remaining argument is to claim that Magone's and Orsaia's actions on plaintiff's last day of employment somehow establish pretext. There is nothing in Orsaia's alleged comment that Newmark was "not a good fit" (Newmark 10) to suggest retaliatory animus, especially in the context the Hospital's probationary policy (56.1 St. Ex. 11, N-424-25), and in the context of the rest of Newmark's testimony that Orsaia and Magone said "that there were attendance issues, punctuality issues, there were issues relating to the general work" (56.1 St. ¶216; Newmark 10). Newmark again cites her own testimony out of context and inconsistent with its plain meaning (Opposition pp. 27-28) when she claims that Magone "threw" Newmark's evaluation at her (i.e., nine pieces of paper, presumably stapled, 56.1 St., Ex. 7), when Newmark in fact testified that "Then Cathy Magone kind of threw my evaluation at me. *She pushed it across the desk*" (Newmark 29) (emphasis supplied). Newmark's conclusory statement (Opposition, p. 28) that Magone escorted her while she collected her belongings and left the building was "contrary to

26

past practice" is completely unsupported in the record, and apparently based only on Newmark's subjective and speculative assertion that "I thought that was very unusual" (Newmark 31). In any event, none of the factual claims offered in plaintiff's Opposition in support of this argument have anything whatsoever to do with defendants' previously-reached conclusion that Newmark had failed to successfully complete her probationary period.

9. *Plaintiff's arguments, in aggregate, do not constitute evidence of pretext.* Implicit in plaintiff's recitation of allegedly suspicious circumstances surrounding her termination, each item of which has, above, been demonstrated to be unsupported by the record and irrelevant as a matter of law, is that although the indicia she cites individually fail to demonstrate pretext, the sheer multiplicity of her accusations somehow aggregate into a genuine issue of material fact from which pretext may be inferred. If indeed plaintiff intends such an argument, for which she advances no cases, this Circuit recognizes no principle whereby an abundance of frivolous arguments is taken to be more credible than a few. To the contrary, to defeat summary judgment, plaintiff must offer sufficient evidence, not argument, to create a genuine issue of material fact regarding the Hospital's reasons for her termination.[12] Because plaintiff has offered none, her claim of retaliation should be dismissed.

In sum, plaintiff's efforts to create a triable issue of fact concerning defendants' reasons for terminating her employment are untenable, and her claim of retaliation should be dismissed upon summary judgment. *Dawkins v. Witco,* 103 F.Supp. 2d 688, 696 (S.D.N.Y. 2000) (the role of the court is not to sit as a super-personnel department or to second-guess the defendants' good-faith employment decisions).

---

[12] It should be noted that in her deposition, Counterstatement of Facts, and Memorandum of Law, plaintiff offers no allegation that her termination was based on her age, as opposed to retaliatory animus (Newmark 11).

27

## <u>Conclusion</u>

For the foregoing reasons, it is respectfully submitted that plaintiff's Amended Complaint should be dismissed in its entirety upon summary judgment.

Dated: New York, New York
       September 16, 2008

                                    COLLAZO CARLING & MISH LLP

                                    By: _____
                                        John P. Keil (JK 2794)
                                        Attorneys for Defendants
                                        Office and P.O. Address
                                        747 Third Avenue
                                        New York, NY 10017
                                        (212) 758-7862

28